# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHERWIN ALUMINA COMPANY, LLC, *et al.*,[1] | § | Case No. 16-20012 (DRJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

## EMERGENCY MOTION OF SHERWIN ALUMINA COMPANY, LLC, *ET AL.*, FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A PERMANENT FINANCE HEARING PURSUANT TO SECTIONS 105, 361, 362, 363, 364, AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001, AND 9014

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sherwin Alumina Company, LLC (2376); and Sherwin Pipeline, Inc. (9047). The debtors' service address is: 4633 Highway 361, Gregory, Texas 78359.

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") respectfully state the following in support of this motion (this "**Motion**").

## Introduction[2]

1.      Following extensive arm's-length discussions with their prepetition senior secured lender, Commodity Funding, LLC (the "**Prepetition Lender**" or "**DIP Lender**," as applicable), the Debtors have secured a $40-million debtor-in-possession facility (the "**DIP Facility**") to effectuate a holistic and permanent solution to the Debtors' operating and capital structure struggles.  More specifically, Corpus Christi Alumina LLC, an affiliate of the DIP Lender, has agreed to serve as a stalking horse bidder in a sale of substantially all of the Debtors' assets pursuant to a chapter 11 plan filed on the Petition Date or as otherwise approved by the Court.

2.      To consummate their proposed sale, the Debtors are in desperate need of liquidity. More specifically, the Debtors' current cash balance of approximately $17.152 million is not sufficient to sustain operations or otherwise satisfy the costs of administering these chapter 11 cases due to the fact that the Debtors are currently operating at a significant loss.  The only viable (and available) source of financing is the DIP Facility.  Substantially all of the Debtors' assets are encumbered by first-priority liens in favor of the Prepetition Lender.  The Prepetition Lender would not consent to any "priming" financing and, as described in the Lukenda Declaration (as defined below), no third party was interested in providing junior secured financing to the Debtors (let alone on terms as favorable as the proposed DIP Facility).

3.      The proposed DIP Facility will enable the Debtors to transition smoothly into chapter 11 and effectively finance these cases at a minimal cost to these estates.  The key terms of the DIP Facility include:

---

[2]     Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms further below in the Interim DIP Order (as defined below).

- a revolving credit facility of up to $40 million secured by a ***second-priority*** security interest in and lien on (the "**DIP Liens**") all of the Debtors' assets;

- eight-percent (8%) interest rate, which, as described in the Lukenda Declaration, is below market for transactions of this size and nature;

- borrowings and disbursements to be made pursuant to the terms of an agreed 13-week budget (as the same may be modified in accordance with the DIP Credit Agreement, the "**Approved Budget**"), which is attached to the Interim DIP Order as **Exhibit 1**;

- funding for certain budgeted wind-down expenses at the closing of the Sale Transaction, thereby providing additional liquidity to fund the administration of the estates; and

- no commitment fees.

4.      In addition to being the only financing available under the circumstances, the Debtors believe the DIP Facility is reasonable, appropriate and critical to ensure that adequate liquidity is available to fund the Debtors' restructuring.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to enter into proposed DIP Facility.

### Jurisdiction, Venue, and Procedural Background

5.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-1 and 4002-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

8.      On the date hereof (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under the Bankruptcy Code, commencing the above-captioned chapter 11 cases.  A detailed description of the facts and circumstances surrounding these chapter 11 cases is set forth in greater detail in the *Declaration of Kent Britton, Chief Financial Officer of Sherwin Alumina Company, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), filed contemporaneously with this Motion and incorporated by reference herein in its entirety.  In further support of this Motion, the Debtors submit the declaration of James M. Lukenda, a managing director at Huron Consulting Services, LLC, the Debtors' proposed financial advisor in these chapter 11 cases, which is attached as **Exhibit C** (the "**Lukenda Declaration**") and incorporated by reference in its entirety.

9.      The Debtors continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     As of the date of this Motion, the Office of the United States Trustee has not appointed an official committee of unsecured creditors.

### Concise Statement Pursuant to Bankruptcy Rule 4001(c)[3]

11.     The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Interim DIP Order**"), and a final order (the "**Final DIP Order**,"[4] and, together with the Interim DIP Order, the "**DIP Orders**"):

- authorizing the Debtors to enter into the DIP Credit Agreement[5] to obtain cash advances and other extensions of credit in an aggregate principal amount not to

---

[3]    Capitalized terms used but not otherwise defined in this Concise Statement shall have the meanings ascribed to such terms further below in this Motion or in the Interim DIP Order, as applicable.

[4]    The Debtors will file the form of Final DIP Order prior to the Permanent Finance Hearing.

[5]    "**DIP Credit Agreement**" means the Secured Second Lien Super-Priority Debtor-In-Possession Credit Agreement, substantially in the form attached hereto as Exhibit B (as amended, restated, or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement," and, together with the DIP Orders and any and all documents, agreements, and instruments delivered pursuant thereto or executed or filed

exceed $40 million, including up to $500,000 on an interim basis (the "**Interim Amount**"), on the terms and conditions of the DIP Credit Agreement;

- granting superpriority administrative claim status under section 364(c)(1) of the Bankruptcy Code to the DIP Obligations[6] and determining that the DIP Obligations are secured under sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code by valid, enforceable, non-avoidable, and fully perfected liens on and security interests in all DIP Collateral;

- approving the adequate protection to be provided to the Prepetition Lender; and

- modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility Documents.

12.     The Debtors also seek a hearing (the "**Initial Finance Hearing**") to consider entry of the Interim DIP Order within three business days of the Petition Date to the extent practicable.  The Debtors further also seek a hearing, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "**Permanent Finance Hearing**") to consider entry of the Final DIP Order.

13.     The following is a summary of  the material terms of the Interim DIP Order:[7]

| Bankruptcy Rule | Summary of Material Terms | Provision in Relevant Documents |
|---|---|---|
| **Interest Holders** Fed R. Bankr. P. 4001(b)(1)(B)(i) | Commodity Funding, LLC, in its capacity as Prepetition Lender and DIP Lender. | DIP Credit Agt. pg. 1 <br><br> Interim DIP Order pg. 2 |
| **Purpose For Use** Fed R. Bankr. P. 4001(b)(1)(B)(ii) | The Debtors have an immediate need to use cash collateral, as such term is defined in Bankruptcy Code section 363 ("**Cash Collateral**") to, among other things, permit the orderly continuation of their obligations and preserve the going concern value of their business.  Without access to Cash Collateral, the Debtors' estates will suffer immediate and irreparable harm. | Interim DIP Order ¶ I |
| Material Terms of Use Fed. R. Bankr. P. | The total DIP Facility shall include loans to be advanced and made available to the Borrowers in the aggregate maximum principal amount of $40 million, payable at an interest rate of 8% per annum; *provided*, that, during the continuance of an Event of Default, the DIP | DIP Credit Agt. pgs. 3, 21, 28, 45, |

---

in connection therewith, as may be amended hereafter from time to time, including, without limitation, the Approved Budget, collectively, the "**DIP Facility Documents**").

[6]   "**DIP Obligations**" means all obligations of the Debtors incurred in connection with the DIP Facility Documents.

[7]   Unless otherwise indicated, capitalized terms used and not defined in the table below have the meanings set forth elsewhere in this Motion, DIP Credit Agreement, or in the Interim DIP Order, as applicable.  The summaries and descriptions are qualified in their entirety by the Interim DIP Order.  In the event that there is a conflict between this Motion and the Interim DIP Order, the Interim DIP Order controls in all respects.

| Bankruptcy Rule | Summary of Material Terms | Provision in Relevant Documents |
|---|---|---|
| 4001(b)(l)(B)(iii), 4001(c)(1)(B) | Facility shall accrue interest at an additional 2% per annum, payable in cash on demand.<br><br>**Termination**:  The DIP Facility and the Debtors' right to use Cash Collateral (as applicable) shall automatically terminate without further notice or court proceedings on the earlier of:<br><br>• May 11, 2016;<br><br>• the effective date of a chapter 11 plan in respect of any Debtor;<br><br>• the date on which all DIP Obligations become due and payable;<br><br>• an Event of Default under the DIP Credit Agreement;<br><br>• the acceptance by any Debtor of any offer or bid for the purchase of all or substantially all of the assets of any Debtor or any of the equity of a reorganized Debtor which is unacceptable to the DIP Lender, unless the proceeds of such offer or bid will be used to pay in full in cash all of the DIP Obligations (which, for the avoidance of doubt, may occur only upon the payment in full in cash of all Prepetition Credit Agreement Obligations);<br><br>• the acceleration of the DIP Loans in accordance with the DIP Facility Documents; or<br><br>• the conversion or dismissal of these chapter 11 cases.<br><br>**Surcharge Waiver**:  All rights to surcharge the DIP Collateral under section 506(c) of the Bankruptcy Code will be waived, and such waiver shall be binding upon the Debtors and all parties in interest.<br><br>**Claim Stipulation**:  The Debtors shall stipulate and acknowledge, among other things: (i) the amount, validity, priority, and enforceability of the Prepetition Credit Agreement Obligations and Prepetition Credit Agreement Liens; and (ii) that no portion of the foregoing are subject to any offset, challenge, defense, claim, or counterclaim.<br><br>**Limitation on Use of Cash Collateral**:  The DIP Loans and the Cash Collateral may be used only for working capital purposes of the Debtors, current interest and fees under the DIP Facility, and the allowed administrative costs and expenses of these chapter 11 cases, in each case, solely in accordance with the Approved Budget and the DIP Orders. | 48<br><br>Interim DIP Order ¶ ¶ G, I, 11, 18 |
| Carve Out<br>Fed. R. Bankr. P. 4001(b)(l)(B)(iii), 4001(c)(1)(B) | **Carve-Out**:  The DIP Claims and DIP Liens shall be subject to a "**Carve-Out**," which shall mean, subject in all respects to the DIP Facility Documents:  (i) amounts payable pursuant to 28 U.S.C. § 1930(a); (ii) fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) allowed fees and expenses incurred before delivery of a Carve-Out Trigger Notice by any professionals retained by the Debtors or, subject in all respects to the Approved Budget, any official committee of unsecured creditors (the "**Creditors' Committee**") in these cases (collectively, the "**Professionals**"), and owed pursuant to such Professionals' respective engagement letters (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letter) (regardless of the timing of allowance of such fees and expenses); and (iv) following delivery of a Carve-Out Trigger Notice, allowed fees and expenses incurred after such date by Professionals and owed pursuant to such Professionals' respective engagement letters (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letter) (regardless of the timing of allowance of such fees and expenses) in an aggregate amount not to exceed $250,000. | Interim DIP Order ¶ 10 |

| Bankruptcy Rule | Summary of Material Terms | Provision in Relevant Documents |
|---|---|---|
| Sale Process Covenants Fed R. Bankr. P. 4001(c)(1)(B) | Key case milestones under the DIP Facility are:<br><br>• file a motion seeking approval of the bidding procedures within 5 business days of the Petition Date;<br><br>• no later than 10 business days after the Petition Date, file a chapter 11 plan and related disclosure statement contemplating the sale of all or substantially all of the Debtors' assets to an affiliate of the Prepetition Lender pursuant to a credit bid;<br><br>• obtain Court approval of the bidding procedures motion no later than 35 calendar days after the Petition Date;<br><br>• obtain Court approval of the disclosure statement, in form and substance acceptable to the Debtors and the DIP Lender, within 75 days of the Petition Date;<br><br>• conduct an auction or otherwise select the highest and/or best bid within 75 days of the Petition Date;<br><br>• obtain entry of close the Approved Sale by no later than 100 calendar days after the Petition Date; and<br><br>• the sale transaction shall have closed within 120 days of the Petition Date. | DIP Credit Agt. pgs. 51-52 |
| Liens and Priorities Fed R. Bankr. P. 4001(c)(l)(B)(i) | Subject to the Carve-Out, all obligations of the Debtors under the DIP Facility shall be:<br><br>(i) entitled to superpriority claim status under section 364(c)(1) of the Bankruptcy Code with priority over all administrative expense claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code, including, without limitation, claims arising under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 546(c), 726, 1113 or 1114 of the Bankruptcy Code; and<br><br>(ii) secured, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, by a first-priority priming security interest in and lien on all of the Debtors' assets (including avoidance actions), whether now owned or hereinafter acquired, and all proceeds thereof; *provided* that such DIP Liens shall be subject to the Prepetition Credit Agreement Liens (as defined in the DIP Credit Agreement) and any valid, perfected, enforceable, and non-avoidable liens in existence as of the Petition Date that were senior in priority to liens securing obligations owed to the Prepetition Lender as of the Petition Date, in addition to the Carve-Out. | DIP Credit Agt. pgs. 27, 47<br><br>Interim DIP Order ¶¶ 4, 5 |
| Adequate Protection Fed R. Bankr. P. 4001(b)(l)(B)(iv), 4001(c)(1)(B)(ii) | As a condition to the Prepetition Lender providing its consent to the Debtors' use of the collateral securing the obligations owing under the Prepetition Credit Agreement (including cash collateral), the following adequate protection shall be provided to the Prepetition Lender on account of the Debtors' sale, use, or lease of such collateral, upon entry of the Interim DIP Order:  (a) to the extent of any diminution in value of the Prepetition Lender's interest in its prepetition collateral (including cash collateral), replacement liens senior to all other liens on the DIP Collateral, subject only to the Carve-Out, the DIP Liens on the DIP Collateral, and the Permitted Priority Liens and the Prepetition Credit Agreement Liens on the Prepetition Collateral; (b) to the extent of any diminution in value of the Prepetition Lender's interest in its prepetition collateral (including cash collateral), adequate protection in the form of an allowed superpriority administrative expense claim in these chapter 11 cases and any successor case under section 507(b) of the Bankruptcy Code, which claim shall be junior in priority to the DIP Claims and the Carve-Out; (c) payment of the Prepetition Lender's reasonable and documented out of pocket costs and expenses in connection with these chapter 11 cases, including the monitoring of these chapter 11 cases or in connection with the enforcement or protection of any of the Prepetition Lender's rights and remedies; (d) the right to credit bid the Prepetition Lender's claims under the Prepetition Credit Agreement; and (e) certain reporting and information covenants in favor of the Prepetition Lender. | DIP Credit Agt. pg. 30<br><br>Interim DIP Order ¶ 8 |
| Events of Default Fed R. Bankr. P. 4001(c)(l)(B) | Certain standard and customary events shall be an event of default under the DIP Facility Documents unless either waived by the DIP Lender or cured by the Debtors within the applicable cure period. | DIP Credit Agt. pgs. 48-52 |

7

| Bankruptcy Rule | Summary of Material Terms | Provision in Relevant Documents |
|---|---|---|
| Waiver or Modification of the Automatic Stay Fed R. Bankr. P. 4001(c)(1)(B)(iv) | The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Lender to exercise certain remedies set forth in the DIP Credit Agreement. | DIP Credit Agt. pg. 52 Interim DIP Order ¶ 13 |
| Waiver/ Modification of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens Fed R. Bankr. P. 4001(c)(1)(B)(vii) | The Debtors are authorized and directed to negotiate, prepare, enter into and deliver any financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral (as defined below) and securing all of the Debtors' obligations under the DIP Facility Documents, including payment of all DIP Obligations in cash that are requested by the DIP Lender.  Upon entry of the Interim DIP Order, the DIP Liens shall be fully perfected without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other instruments, such that no additional steps need be taken by the DIP Lender to perfect such interests. | DIP Credit Agt. pg. 42 Interim DIP Order ¶ 3(a) |
| Indemnification Fed R. Bankr. P. 4001(c)(1)(B)(ix) | The Debtors shall indemnify and hold harmless the DIP Lender and each Related Party against, and hold each Indemnitee harmless from, any and all losses, claims, and causes of action, among other things, incurred by any Indemnitee or asserted against any Indemnitee in connection with the DIP Facility Documents and the transactions contemplated thereby or any actual or prospective claim, litigation, investigation, or proceeding relating to any of the foregoing, whether caused by or arising, in whole or in part, out of the comparative, contributory, or sole negligence of the Indemnitee. | DIP Credit Agt. pgs. 54-55 |
| Liens on Avoidance Actions Fed R. Bankr. P. 4001(c)(l)(B)(xi) | Subject to the Carve-Out, all obligations of the Debtors under the DIP Facility shall be secured, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, by a first-priority security interest in and lien on all of the Debtors' assets and proceeds thereof (including, subject to entry of the Final DIP Order, proceeds of avoidance actions), whether now owned or hereinafter acquired, and all proceeds thereof; *provided*, that such DIP Liens shall be subject to the Prepetition Credit Agreement Liens and any valid, perfected, enforceable, and non-avoidable liens in existence as of the Petition Date that were senior in priority to liens securing obligations owed to the Prepetition Lender as of the Petition Date. | DIP Credit Agt. pg. 6 Interim DIP Order ¶ 4(a), 5(a) |
| Challenge Period Fed R. Bankr. P. 4001(c)(l)(B) | The DIP Orders shall establish a "**Challenge Period**" of 75 days after the entry of the Interim DIP Order for any party other than the Creditors Committee and 60 days from the date the U.S. Trustee appoints the Creditors' Committee (if any) to evaluate and potentially challenge the Debtors' Stipulations set forth in the Interim DIP Order.  Thereafter, the Debtors' Stipulations (as defined in the Interim DIP Order) shall be binding upon all parties (including, without limitation, the Debtors, the Creditors' Committee (if any), any trustee, examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Cases) (each, a "**Challenge Party**"), unless and solely to the extent that (i) a Challenge Party commences a Challenge (as defined in the Interim DIP Order) prior to the expiration of the Challenge Period, and (ii) the Court rules in favor of the plaintiff in any such timely filed Challenge. | Interim DIP Order ¶ 15 |
| **Priming or *Pari Passu* Liens** Fed R. Bankr. P. 4001(c)(1)(B) | The DIP Liens are junior to the liens securing the Prepetition Credit Facility.  Furthermore, until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments related thereto are terminated in accordance with the terms of the DIP Facility Documents, the Debtors shall not in any way grant, seek to grant, or cause to be granted any lien and/or claim that is senior to or *pari passu* with any of the liens, security interests, and claims provided under the Interim DIP Order to the DIP Lender or the Prepetition Lender (other than the Carve-Out), including, without limitation, by offering a subsequent lender or any other party a superior or *pari passu* lien or claim pursuant to Bankruptcy Code section 364(d), or otherwise. | DIP Credit Agt. pgs. 44-45, 50 Interim DIP Order ¶ 2(c) |

KE 38894678.12

## Statement Regarding Significant Provisions

14.     The Interim DIP Order contains certain of the provisions (the "**Significant Provisions**")[8] identified on Exhibit B to the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Bankruptcy Cases in the Southern District of Texas (the "**Complex Chapter 11 Procedures**") as summarized in the Attorney Checklist Concerning Motion and Order Pertaining to Use of Cash Collateral attached as **Exhibit D**.

15.     The Interim DIP Order:  (a) binds the estate or any parties in interest with respect to the validity, perfection, or amount of a secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor (subject to certain challenge rights); (b) waives the Debtors' rights under section 506(c) of the Bankruptcy Code; (c) grants a prepetition secured creditor liens on the proceeds of the Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code; and (d) grants administrative adequate protection claims.  The explanation for the inclusion of the foregoing Significant Provisions, as required by rule 4(C)(vi) of the Complex Chapter 11 Procedures, which is made applicable by Bankruptcy Local Rule 1075-1, is that without such Significant Provisions, the Prepetition Lender would not consent to the Debtors' use of Cash Collateral and, as a result, the Debtors would not be able to access the liquidity provided by the DIP Facility.

16.     As further described in the First Day Declaration, Sherwin appointed restructuring professional Alan J. Carr as independent director prior to the commencement of these chapter 11

---

[8]     Significant Provisions refer to those provisions that:  (a) grant cross-collateralization protection (other than replacement liens or other adequate protection) to prepetition secured creditors; (b) deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in section 552(b) of the Bankruptcy Code; (c) bind the bankruptcy estates or any parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor; (d) waive or limit the estate's rights under section 506(c) of the bankruptcy code; (e) grant prepetition secured creditors liens on the debtor's claims and causes of action arising under chapter 5 of the Bankruptcy Code; (f) impose deadlines for the filing of a plan or disclosure statement; and (g) grant an administrative claim.

cases to investigate possible claims and causes of action that it may have against its indirect shareholder and its affiliates, and to negotiate a possible restructuring involving its ultimate equity owner, Glencore plc ("**Glencore**").  In connection with this effort, the Debtors' counsel, at Mr. Carr's direction, reviewed thousands of documents and conducted twelve interviews.  The investigation—which was conducted at Mr. Carr's direction and which consisted of significant time spent on document review, witness interviews, and legal research and analysis—culminated in a 71-page report that focused on all material transactions and interactions among the Debtors and various Glencore affiliates.  In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases.  Accordingly, the Significant Provisions in the Interim DIP Order should be approved.

<u>**Statement of Facts**</u>

**I.      The Prepetition Credit Facility**.

17.      The Debtors are indirect, wholly-owned subsidiaries of Glencore, a multinational commodity trading and mining enterprise.  Glencore subsidiary Commodity Funding, LLC is the Prepetition Lender and the proposed DIP Lender.

18.      Sherwin and Commodity Funding, LLC are parties to the Credit Agreement, dated as of July 1, 2009 (as modified, amended, waived, or supplemented, the "**Prepetition Credit Agreement**"), pursuant to which a $95-million revolving credit facility was made available to the Debtors, all of which is drawn as of the Petition Date.  The obligations under the Prepetition Credit Facility mature in July 2016 and bear interest at a floating rate equal to 130 percent of the applicable federal rate.  The Debtors' obligations under the Prepetition Credit Facility are secured by a first-priority lien on and security interest in substantially all of the Debtors' real and personal property.

II.     **Other Secured Obligations**.

19.     In the ordinary course of business, the Debtors utilize an assortment of vendors, including labor and repair contractors, parts and equipment suppliers, heavy machinery and equipment lessors, hydrocarbon transporters, professionals, and employee benefits providers. Certain vendors may assert assert liens against the Debtors' assets if the Debtors fail to pay these vendors in the ordinary course of business.

<u>**The Debtors Have an Immediate Need for Cash**</u>

20.     As of the Petition Date, the Debtors hold approximately $17.152 million in cash. Nevertheless, the Debtors require the proceeds of the DIP Loans and Cash Collateral to satisfy employee wages and benefits, tax obligations, certain other operational expenses as set forth in the Approved Budget, and to fund the administration of these chapter 11 cases.

21.     Without access to the DIP Loans and Cash Collateral, the Debtors will have insufficient funds to sustain operations, preserve and maximize the value of their estates, and successfully administer these chapter 11 cases.   More specifically, these estates will be immediately and irreparably harmed absent approval of the Interim DIP Order and the granting of access to the DIP Loans and Cash Collateral.  Since all cash on hand is Cash Collateral, the Debtors simply have no ability to operate or restructure absent approval of the relief requested herein.  Value will not only deteriorate but disappear to the detriment of all stakeholders.  Thus, the Debtors respectfully submit that the Court enter the Interim DIP Order.

<u>**Basis for Relief**</u>

I.     **Approval Pursuant to Section 364(c) of the Bankruptcy Code**.

22.     In return for the financing to be made available under the DIP Facility, the Debtors propose to provide superpriority administrative expense claims, security interests, and other liens as set forth herein pursuant to section 364(c) of the Bankruptcy Code.  Section 364(c)

of the Bankruptcy Code provides that if a debtor is unable to obtain unsecured credit allowable as an administrative expense, the court may authorize the debtor to obtain credit or incur debt (a) on a superpriority administrative basis, (b) secured by a lien on the debtor's unencumbered assets, or (c) secured by a junior lien on the debtor's already encumbered assets, or a combination of the foregoing. *See* 11 U.S.C. § 364(c).

23.     The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor in possession is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. 11 U.S.C. § 364(c); *see also In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (holding that a debtor seeking secured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b)), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987).

24.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

(a)     the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code (*i.e.*, by allowing a lender only an administrative claim);

(b)     the credit transaction is necessary to preserve the assets of the estate; and

(c)     the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37–39 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393, 401–02 (Bankr. E.D. Pa. 1988); *Crouse*, 71 B.R. at 549.

**A.      The Debtors Are Unable to Obtain Unsecured or Junior Secured Credit.**

25.     If a debtor is unable to obtain unsecured credit, section 364(c)(1) of the Bankruptcy Code provides that the debtor may obtain credit that is secured by an administrative

expense claim having priority "over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]."  11 U.S.C. § 364(c)(1).

26.     To show that the financing required is not obtainable on an unsecured basis, the Debtors need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by section 364(c) or (d) of the Bankruptcy Code. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also Anchor Savs. Bank FSB v. Sky Valley*, 99 B.R. 117, 120 n.4 (noting that the debtor satisfied the requirement of section 364(d) by "approach[ing] all lenders reasonably likely to be willing to make a junior or unsecured loan"); *Ames*, 115 B.R. at 37–40 (holding that debtor must show that it has made a reasonable effort to seek other sources of financing under section 364(a) and (b) of the Bankruptcy Code.  Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  *Snowshoe*, 789 F.2d at 1088; *see also In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) ("It would be unrealistic and unnecessary to require Debtor to conduct such an exhaustive search for financing . . . . [I]t is clear that Debtor suffers some financial stress and has little or no unencumbered property."); *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders.").

27.     As described in the Lukenda Declaration, after consultation with their advisors, the Debtors determined that it was necessary to obtain postpetition financing to fund their ordinary course operations and the administrative costs of these chapter 11 cases.  Furthermore, in consultation with their advisors, the Debtors—at the direction of their independent manager—determined that it would be difficult, if not impossible, to obtain postpetition financing on an

unsecured basis on reasonable market terms from any party other than Commodity Funding, LLC in light of, among other things, current market conditions and the specific issues impacting the Debtors' operations.

28.     Nevertheless, after negotiating the key terms of the DIP Facility—which the DIP Lender is providing on a junior secured basis and has agreed to credit bid or forgive in connection with consummation of the Sale Transaction under a chapter 11 plan—the Debtors' financial advisor solicited alternative financing proposals from third-party financing sources that included commercial banks and alternative asset managers.  No financing source contacted by the Debtors' financial advisor agreed to provide financing to the Debtors.  These efforts confirmed the Debtors' preliminary assessment that the DIP Facility allows the Debtors to obtain postpetition financing on extremely favorable terms.  Under these circumstances, providing the DIP Lender with a superpriority administrative claim is reasonable and appropriate.

29.     The Debtors believe that the critical financing they need to administer their chapter 11 cases is not available other than through the proposed DIP Facility.  As such, the Debtors respectfully represent that granting the DIP Liens to the DIP Lender is warranted under the circumstances.

**B.      The DIP Facility is Necessary to Preserve and Protect the Assets of the Debtors' Estates**.

30.     It is essential that the Debtors immediately obtain the financing necessary to preserve and protect the value of their estates.  As noted in the Lukenda Declaration, the Debtors need additional funding to continue to operate, pay ordinary expenses, and fund the costs of their chapter 11 cases, all of which will protect the value of the Debtors' estates.  Moreover, the additional liquidity provided by the DIP Facility will permit the Debtors to further market and consummate the Sale Transaction, which will yield the maximum available price for the Debtors'

14

assets. Based on the foregoing, the Debtors submit that the DIP Facility is necessary to protect the value of the Debtors' estates.

> **C.     The Terms of the DIP Facility are Entirely Fair, Reasonable and Appropriate Under the Circumstances**.

31.     A bankruptcy court must judge the terms and conditions of debtor-in-possession financing by taking into account the debtor's financial circumstances and alternatives.  *In re W. Pac. Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997) (approving financing facility because it fairly reflected the debtor's "situation and the market in which the [d]ebtor is forced to participate as a result of its financial circumstances and the deadlines it faces").  The terms of the DIP Facility are entirely fair and reasonable under the circumstances.

32.     As set forth in the Lukenda Declaration, given the Debtors' inability to obtain third-party financing, the Debtors believe that the terms of the DIP Facility represent the best possible financing package available under the circumstances.  The DIP Facility does not include any fees or original issue discount that would reduce the amount of liquidity actually available to the Debtors under the facility.

33.     As set forth in the Lukenda Declaration, the Debtors, after consultation with their financial advisor, have determined that the costs of the DIP Facility are below market for a loan of this type:  the DIP Facility does not require the Debtors to pay any commitment or related fees and the proposed eight-percent interest rate is below the interest rates under loans provided by third-party financing sources.  The milestones set forth in the DIP Credit Agreement also provide a sufficient timeframe during which the Debtors must complete the marketing process for the Debtors' assets and consummate the Sale Transaction.  Finally, the DIP Lender has agreed to credit bid or waive the DIP Facility upon consummation of the Sale Transaction if consummated pursuant to a chapter 11 plan.

34.     The Debtors believe that the terms and conditions of the DIP Facility are entirely fair under the circumstances and could not be improved upon or replicated in the marketplace. In the absence of immediate access to the DIP Facility from the DIP Lender and continued access to cash collateral, the Debtors will be unable to bear the costs of these chapter 11 cases or complete the proposed sale of their assets.   Thus, the Debtors submit that entry into the DIP Credit Agreement (which also permits the Debtors to continue to access cash collateral) on the terms and conditions set forth therein represents a prudent exercise of their business judgment and should be approved.

35.     For these reasons, the Debtors believe that the terms of the DIP Credit Agreement—the only source of available funding—are entirely fair and reasonable in light of the circumstances of these cases, and will prevent the immediate and irreparable harm that would result from the Debtors' inability to continue its operations and pursue the sale of the Debtors' assets.

## II.     The Interests of the Prepetition Lender are Adequately Protected.

### A.     The Prepetition Lender is Adequately Protected for Purposes of Section 364 of the Bankruptcy Code.

36.     The Debtors submit that, in light of the Prepetition Lender's actual consent and the fact that the Prepetition Lender's liens and security interests are not being primed, no adequate protection showing need be made.   *See Anchor Savings*, 99 B.R. at 12.

37.     This notwithstanding, a debtor may obtain postpetition credit "secured by a senior or equal lien on property of the estate that is subject to a lien only if" the debtor, among other things, provides "adequate protection" to those parties whose liens are primed.   *See* 11 U.S.C. § 364(d)(1)(B).   As described in further detail below, what constitutes adequate protection is decided on a case-by-case basis, and adequate protection may be provided in various forms,

16

including payment of adequate protection fees, payment of interest, or granting of replacement liens or administrative claims. *See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp.), Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." (citation omitted)).

38.     Here, the adequate protection afforded to the Prepetition Lender is sufficient and appropriate. The adequate protection is fair and reasonable and would be sufficient to satisfy the requirements of section 364(d)(1)(B) of the Bankruptcy Code, if applicable. Based on the foregoing, the Debtors respectfully submit that the Prepetition Lender's interests are adequately protected.

> **B.     The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Are Appropriate**.

39.     Section 363 of the Bankruptcy Code generally governs the use of estate property. Section 363(c)(2)(A) permits a debtor in possession to use cash collateral with the consent of the secured party. Here, the Prepetition Lender consents to the Debtors use of Prepetition Collateral (including Cash Collateral), subject to the terms and limitations set forth in the Interim DIP Order.

40.     Section 363(e) provides for adequate protection of interests in property when a debtor uses cash collateral. The purpose of adequate protection is to ensure that a secured party's economic position is not worsened because of the filing of a bankruptcy case. *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006). Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (en banc). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection,

such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See, e.g.*, *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986).

41.     As described more fully above and the Interim DIP Order, the Debtors propose to provide the Prepetition Lender with five primary forms of Adequate Protection to protect against the postpetition diminution in value of the Prepetition Collateral resulting from the use, sale, or lease of the Prepetition Collateral by the Debtors and the imposition of the automatic stay (collectively, the "**Adequate Protection**"):

a.     ***Adequate Protection Claim***.  A superpriority claim under section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims (other than the DIP Claims and the Carve-Out) now existing or after arising.

b.     ***Adequate Protection Liens***.  A valid, enforceable, fully perfected security interest in and replacement lien on all of the Debtors' assets subject to: (i) the Carve-Out; (ii) the DIP Liens on the DIP Collateral; and (iii) the Permitted Priority Liens and Prepetition Credit Agreement Liens on the Prepetition Collateral.  The replacement liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

c.     ***Payment of Lender's Fees and Expenses***.  Payment of the Prepetition Lender's reasonable and documented out of pocket costs and expenses in connection with these chapter 11 cases, including the monitoring of these chapter 11 cases or in connection with the enforcement or protection of any of the Prepetition Lender's rights and remedies.

d.     ***Right to Credit Bid***.  The Prepetition Lender (including its assignees and designees) shall be allowed to credit bid the full amount of the Prepetition Credit Agreement Obligations with respect to any sale of the Prepetition Collateral not in the ordinary course of business pursuant to a Chapter 11 Plan or section 363 of the Bankruptcy Code.

e.     ***Reporting***.  Certain reporting and information covenants, including: (i) reports of cash receipts and disbursements and incurred expenses on a weekly basis, commencing on the entry of the Interim DIP Order; (ii) copies of all reports filed with the U.S. Trustee within two business days before such filing; (iii) a good-faith estimate of the accrued but unpaid fees, expenses, and costs incurred by the Debtors' advisors as of a date identified by the Prepetition Lender, as the Prepetition Lender may

from time-to-time reasonably request in writing; (iv) an illustrative, non-binding forecast of the projected fees, expenses, and costs of the Debtors' advisors for a period identified by the DIP Lender, as the DIP Lender may from time to time reasonably request in writing; (v) regular updates as necessary to keep the DIP Lender and the Prepetition Lender reasonably informed regarding any material developments relating to the Debtors' efforts to market and sell any portion of the DIP Collateral or the Prepetition Collateral, as applicable, conducted pursuant to a Chapter 11 Plan or section 363 of the Bankruptcy Code; and (vi) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of the Debtors, or concerning any matter that may affect the administration of the estates, as the Prepetition Lender may from time-to-time reasonably request in writing.

42.     The Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Lender is appropriate.  The Debtors' provision of the Adequate Protection is not only necessary to protect against any diminution in value but is fair and appropriate under the circumstances of these chapter 11 cases to ensure that the Debtors are able to continue using the Prepetition Collateral (including Cash Collateral), subject to the terms and limitations set forth in the Interim DIP Order, for the benefit the Debtors' estates and all other parties in interest.

**III.     The Automatic Stay Should Be Modified on a Limited Basis**.

43.     The proposed Interim DIP Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the DIP Lender to file any financing statements, security agreements, notices of liens, and other similar instruments and documents to validate and perfect the liens and security interests granted to them under the Interim DIP Order.  The proposed Interim DIP Order further provides that the automatic stay is modified as necessary to permit the Debtors to grant the DIP Liens to the DIP Lender and to incur all liabilities and obligations set forth in the Interim DIP Order.  Finally, the proposed Interim DIP Order provides that, following the occurrence of the Termination Date (as defined in

the Interim DIP Order), the automatic stay shall be vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies in accordance with the DIP Facility Documents, or applicable law.  The Debtors submit that the proposed modifications of the automatic stay are customary in financings such as the DIP Facility and such modification is, in the Debtors' business judgment, reasonable and fair under the circumstances of these chapter 11 cases and, therefore, warrants approval by the Court.

**IV.     Failure to Obtain Immediate Interim Access to the DIP Facility and Cash Collateral Would Cause Immediate and Irreparable Harm.**

44.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  Courts apply the business judgment standard applicable to other business decisions when considering whether to conduct a preliminary hearing.  *See, e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985).  After this 14-day period, the request for financing is not limited to those amounts necessary to prevent disruption of the debtor's business, and the debtor is entitled to borrow those amounts that it believes prudent in the operation of its business.  *See, e.g.*, *id.*

45.     The Debtors request that the Court hold and conduct a hearing to consider entry of the Interim DIP Order authorizing the Debtors to access the DIP Facility on an interim basis pending the Permanent Finance Hearing.  The Debtors require the Interim Amount prior to the Permanent Finance Hearing and entry of the Final DIP Order to be able to continue to operate and pay their administrative expenses, which the Debtors are unable to fund in full with cash

collateral alone.  This relief will enable the Debtors to operate their business in a manner that will permit them to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to their estates and all parties in interest, pending the Permanent Finance Hearing.

### Request for Permanent Finance Hearing

46.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Permanent Finance Hearing that is as soon as practicable and fix the time and date prior to the Permanent Finance Hearing for parties to file objections to this Motion.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

47.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Emergency Consideration

48.     The Debtors respectfully request emergency consideration of this Motion.  As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### Notice

49.     The Debtors will provide notice of this Motion to the following parties or their respective counsel (if known):  (a) the Office of the United States Trustee for the Southern

District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lender; (d) the Prepetition Lender; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the Environmental Protection Agency; (h) the office of the attorneys general for the states in which the Debtors operate; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

50.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

KE 38894678.12

WHEREFORE, the Debtors respectfully request that the Court enter the Interim DIP

Order, granting the relief requested herein and such other relief as the Court deems appropriate

under the circumstances.

Respectfully Submitted,

*/s/ Zack A. Clement*

Dated:  January 11, 2016

Zack A. Clement (TX Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond
Houston, Texas 77025
Telephone:      (832) 274-7629
Email:           zack.clement@icloud.com

- and -

Joshua A. Sussberg, P.C.  (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com

- and -

James H.M. Sprayregen, P.C. (*pro hac vice* admission pending)
Gregory F. Pesce (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:           james.sprayregen@kirkland.com
                 gregory.pesce@kirkland.com

*Proposed Counsel for the*
*Debtors and Debtors in Possession*

## **Certificate of Service**

I certify that on January 11, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Zack A. Clement*
One of Counsel