IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SHERWIN ALUMINA COMPANY, LLC, *et al.*,[1] | Case No. 16-20012 (DRJ) |
| Debtors. | (Jointly Administered) |

**PRELIMINARY OBJECTION OF NORANDA BAUXITE LTD.
TO EMERGENCY MOTION OF SHERWIN ALUMINA COMPANY, LLC, *ET AL.*,
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS (I) TO ASSUME
THE NORANDA AGREEMENT AND (II) TO SATISFY OBLIGATIONS UNDER
THE NORANDA AGREEMENT AND ENFORCE THE AUTOMATIC STAY**

Noranda Bauxite Ltd. ("Noranda"), by and through its undersigned counsel, hereby files this preliminary objection (the "Objection") to the *Emergency Motion of Sherwin Alumina Company, LLC,* et al.*, for Entry of an Order Authorizing the Debtors (I) to Assume the Noranda Agreement and (II) to Satisfy Obligations Under the Noranda Agreement and Enforce the Automatic Stay* [Docket No. 21] (the "Assumption Motion"),[2] and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  Noranda does not object to approval of a reasonable briefing schedule that fairly balances the Debtors' desire to expeditiously resolve issues relating to their proposed assumption of the Noranda Agreement with Noranda's fundamental due process rights. Unfortunately, the Debtors' proposed litigation schedule falls far short of achieving this balance, and would significantly prejudice Noranda's ability to appropriately address the myriad of legal

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sherwin Alumina Company, LLC (2376); and Sherwin Pipeline, Inc. (9047) (the "Debtors"). The debtors' service address is: 4633 Highway 361, Gregory, Texas 78359

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Assumption Motion.

and factual issues implicated by the Assumption Motion. Any suggestion that these issues are simple or straight-forward is belied by the Assumption Motion itself, which includes a nearly twenty page expert report and more than thirty pages of legal briefing on complex issues associated with, among other things, the applicability of the Bankruptcy Code's safe harbor provisions to the Noranda Agreement.

2. However, Noranda is prepared to move expeditiously to resolve these issues, and would support approval of a modified briefing schedule that provides only a modest extension (45 days) beyond what the Debtors have proposed.[3] This revised schedule would accommodate the Debtors' desire to achieve greater certainty regarding the Noranda Agreement as expeditiously as possible, while affording Noranda a reasonable opportunity to develop the necessary factual record and legal arguments that this Court will need to consider in deciding the Assumption Motion.

3. A brief extension of the proposed litigation schedule is especially warranted in the instant case, as the alleged exigencies that are said to demand an accelerated schedule are entirely of the Debtors' (and their controlling stakeholders') own creation. Specifically, and as set forth in the Debtors' first day declaration, the Debtors' (1) sole equity holder, (2) prepetition secured lender, (3) proposed post-petition DIP lender, (4) proposed stalking horse purchaser, (5) largest purchaser, and (6) second largest supplier are all affiliates of the same entity—Glencore plc (collectively, the "Glencore Entities"). Indeed, it would appear that the Glencore Entities are attempting to utilize this chapter 11 process to effectuate a swift cleansing of the Debtors' balance sheet while retaining the Glencore Entities' equity ownership of the Debtors and while general unsecured creditors are slated to receive pennies on the dollar,

---

[3] Subject to the Court's availability, revisions to the proposed schedule appear in the blackline reflecting Noranda's proposed changes to the Scheduling Order, attached hereto as Exhibit A.

if anything.  These transactions are not straight-forward and will require thorough vetting and scrutiny by creditors and, ultimately, the Court.  Indeed, the Debtors themselves recognized that the proposed transactions would be subject to scrutiny, and as a result conducted a prepetition investigation that required the review of hundreds of thousands of documents and ten witness interviews.  *See* First Day Decl. ¶¶ 6–7.  Having negotiated prepetition a restructuring plan with only the Glencore Entities, the Debtors cannot legitimately contend that the rights of their unaffiliated stakeholders must be sacrificed to satisfy the Glencore Entities' self-serving desire to push these cases through on an accelerated timeline.  All parties in interest should be afforded a meaningful opportunity to review and consider the events that have transpired to date and the best path forward.

4. Aside from the suggested briefing schedule, the proposed Scheduling Order includes other significant issues that should be addressed.  Most notably, Noranda should not be required to effectively (and non-consensually) finance the Glencore Entities' aggressive restructuring strategy by being forced to continue to provide bauxite to the Debtors on the prepetition trade terms set forth in the Noranda Agreement during the interim period prior to this Court's consideration of the Assumption Motion.  This is because, unlike the typical case where a non-debtor counterparty can be required to perform pursuant to an executory contract pending assumption or rejection by the debtor, in the instant case Noranda believes it has the right to terminate the Noranda Agreement today as a result of its safe-harbored termination rights under section 556 of the Bankruptcy Code.

5. Indeed, the Debtors devote a significant portion of the Assumption Motion in an ill-fated attempt to preemptively dispute this very contention.  The first day hearing is not the appropriate time or procedural posture to address the merits of these arguments, and Noranda

reserves all rights in that regard. However, while Noranda is willing (subject to approval of an agreed-upon briefing schedule and a full reservation of rights) to refrain from exercising any termination right it may have today to allow the parties (and the Court) to consider these issues on an appropriate basis, it will do so only if the Debtors are directed to (a) pay, no later than two business days after delivery thereof, for any bauxite the Debtors acquire from Noranda before this Court's ruling on the Assumption Motion and (b) pay, no later than two business days after entry of the requested Scheduling Order, all prepetition amounts outstanding under the Noranda Agreement.

6. Accelerated repayment of amounts incurred by the Debtors postpetition is largely a timing issue only, as such amounts would otherwise be entitled to administrative expense status and would therefore have to be paid by no later than confirmation of any chapter 11 plan. Moreover, the Debtors project that they will have more than ample liquidity to satisfy such obligations, and therefore early payment would not prejudice the Debtors' other stakeholders.[4] On the other hand, accelerated repayment would appropriately and fairly protect Noranda from the risk that it could be required, notwithstanding any safe-harbored termination right it may otherwise be permitted to exercise, to provide bauxite to the Debtors during this interim period for which it is never reimbursed (if, for example, the Debtors prove to be administratively insolvent or their plan or sale process is unsuccessful). This compromise appropriately balances the Debtors' desire to continue to receive critical bauxite from Noranda,

---

[4] *See Emergency Motion of Sherwin Alumina Company, LLC, et al., for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Lender, (IV) Modifying the Automatic Stay, and (V) Scheduling a Permanent Finance Hearing Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014*, Ex. A, Approved Budget [Docket No. 26-1 Ex. A.].

with Noranda's legitimate interest that it not be forced to finance, on an unsecured basis, the Glencore Entities' restructuring objectives.

## OBJECTION

**I.   The Proposed Briefing Schedule is Inappropriate and Does Not Provide Sufficient Time to Develop the Necessary Factual and Legal Record**

7.   The Debtors' proposed Scheduling Order would require Noranda to file an objection to the Assumption Motion, together with any supporting evidentiary materials, including an expert report, within sixteen days of entry of the proposed Scheduling Order. While Noranda is prepared to move quickly, this schedule is patently unfair, would prejudice Noranda's due process rights without any commensurate benefit to the Debtors' estates, and should be rejected by the Court.

8.   The Assumption Motion raises complex factual and legal issues that will require the parties to conduct discovery in a cooperative and expeditious manner. For instance, to prevail on the Assumption Motion, the Debtors will have to carry their burden to demonstrate that the decision to assume the Noranda Agreement is a valid exercise of their business judgment. *See In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426–27 (Bankr. N.D. Tex. 2009) ("In applying the business judgment rule in deciding whether to grant a debtor's motion to reject a contract a court is not adjured to blindly accept, but rather only to show proper deference to the business judgment of the debtor's management.") (citing *Richmond Leasing*, 762 F.2d 1303, 1309 (5th Cir.1985)).

9.   Additionally, the Debtors may have to present facts to enable the Court to determine whether the Debtors' proposed cure payment is feasible and sufficient and whether the Debtors (or their assignee) can provide adequate assurance of future performance. *See In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438–39 (5th Cir. 2002) ("To determine if the debtor in

possession has provided 'adequate assurance' of future performance, we have held that courts must look to 'factual conditions,' including 'consider[ation of] whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee.'") (internal citation omitted); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985) ("What constitutes 'adequate assurance' is to be determined by factual conditions."). The Debtors have provided little, if any, factual support to carry their burden on adequate assurance, including with respect to the future capitalization of the proposed stalking horse purchaser.

10. Finally, the Debtors have already submitted an expert report that addresses, among other things, their arguments on whether the Noranda Agreement is subject to the safe-harbor provisions. Noranda will need time to review this expert report, seek fact discovery regarding the report, and potentially prepare its own expert report. It would be inequitable to require Noranda to undertake these critical steps over a mere sixteen days, in contrast to the months that the Debtors have spent preparing for these chapter 11 cases and devising a Noranda-related strategy.[5]

11. In any event, the Debtors cannot contend that there are true exigencies that demand the parties' adherence to their unreasonable litigation schedule. As noted above, the timeline of these cases is being dictated by the financing and restructuring proposal from the Glencore Entities, who are the Debtors' existing equity holders, prepetition secured lenders, proposed postpetition secured lenders, proposed stalking horse purchaser, largest customer and second largest supplier. The interrelationships between these entities, and the impact those relationships have had on the Debtors' financial condition and their proposed restructuring path,

---

[5] This list is merely illustrative and Noranda reserves all rights to seek discovery as to additional factual issues that may be relevant to the Assumption Motion.

is a complicated web that will likely require significant creditor scrutiny to unravel. Not surprisingly, the Glencore Entities are seeking to utilize their leverage to force an expedited restructuring schedule that will effectively preclude such scrutiny. This self-serving strategy is not a legitimate basis to deprive creditors of fundamental due process rights and should be rejected by the Court.

12. That being said, Noranda is willing to work as quickly as possible to accommodate the Debtors' desire for greater certainty regarding the Noranda Agreement. To that end, Noranda believes that a modest extension of the litigation timeline (by 45 days) will adequately address the Debtors' concerns while affording Noranda with sufficient time to develop the necessary record for this Court's proper consideration of the Assumption Motion. Accordingly, Noranda requests that the Court modify the proposed Scheduling Order in a manner consistent with the changes reflected in the proposed markup of the Scheduling Order, set forth on Exhibit A hereto.

## II. The Debtors Should be Directed to Expeditiously Pay Noranda All Outstanding Prepetition and Postpetition Invoices Before the Court's Ruling on the Assumption Motion

13. While Noranda is willing to temporarily forego exercising any right it may have, pursuant to section 556 of the Bankruptcy Code, to terminate the Noranda Agreement pending this Court's determination of the Assumption Motion, it should not be forced to finance the Glencore Entities' restructuring efforts during this interim period through the continuation of the parties' prepetition trade terms. Rather, the proposed Scheduling Order should be modified to require the Debtors to (a) pay for, no later than two business days after delivery thereof, any bauxite the Debtors acquire from Noranda before this Court's ruling on the Assumption Motion and (b) pay, no later than two business days after entry of the requested Scheduling Order, all prepetition amounts outstanding under the Noranda Agreement.

14. These modifications are reasonable under the circumstances, would not prejudice the Debtors' estates and should be approved by the Court. Noranda's agreement to forbear from exercising any right it may have to terminate the Noranda Agreement, and to continue performing under the Noranda Agreement pending this Court's ruling on the Assumption Motion, is a critical concession that will provide meaningful value to the Debtors' estates. In return, Noranda simply requests, with respect to those deliveries that are made during this interim postpetition period, that Noranda not be subjected to the risk that the Debtors prove to be administratively insolvent or that their restructuring or sale strategies fail. Moreover, accelerating these payments is particularly appropriate here in light of the distressed state of the aluminum industry, which the Debtors recount in their first day declaration. *See* First Day Decl. ¶¶ 41–43. Other industry participants, including Noranda, have not been immune to these significant headwinds, and requiring Noranda to continue to perform under the parties' prepetition trade terms, and thereby accept the Debtors' credit risk, would only exacerbate these conditions. Given the Debtors' ample liquidity, as reflected in the proposed DIP cash flow forecast, and the fact that these payments will have to be made in any event, Noranda submits that the modifications described herein should be approved.

### III. The Debtors Cannot Enjoin Noranda from Exercising Its Legal Rights Without Commencing an Adversary Proceeding

15. Through the Scheduling Order, the Debtors seek to enjoin all entities, including Noranda, from taking "any action . . . that is inconsistent with sections 362 or 365 of the Bankruptcy Code (including seeking to terminate the Noranda Agreement on account of the commencement of these chapter 11 cases except as ordered by the Court after a hearing and upon regular notice to all parties in interest)." Scheduling Order ¶ 4. This request for a broad-

sweeping injunction, on less than three days' notice, is procedurally and substantively defective and should be denied.

16. While Noranda has agreed that, subject to the terms described herein, it would agree not to exercise any safe-harbored termination right it may have under the Noranda Agreement and section 556 of the Bankruptcy Code pending this Court's determination of the Assumption Motion, paragraph 4 of the Scheduling Order goes far further. Indeed, the injunctive relief it requests could only be granted, if at all, upon commencement of an adversary proceeding, which the Debtors have not done. *See In re Zale Corp.*, 62 F.3d 746, 763 (5th Cir. 1995) ("Under Rule 7001, an injunction requires an adversary proceeding."). Nor is this injunctive relief necessary for the limited relief that the Debtors require during the interim period. Accordingly, paragraph 4 of the Scheduling Order should be denied or, at a minimum, modified, consistent with the changes reflected in the proposed markup of the Scheduling Order, attached hereto as Exhibit A.

## Reservation of Rights

17. Given the limited time in which Noranda has had to review the Assumption Motion and related pleadings, Noranda hereby reserves all of its rights (i) to amend, modify, or supplement this Objection prior to any hearing on the Assumption Motion or the Scheduling Order; (ii) to present any additional or further arguments at such hearings; (iii) to object to the Assumption Motion; and (iv) to exercise any other rights under the Bankruptcy Code and applicable law.

WHEREFORE Noranda respectfully requests the Court deny entry of the proposed Scheduling Order to the extent provided herein and grant such other and further relief as is just and proper.

Dated:   January 12, 2016

PORTER HEDGES LLP

/s/ John F. Higgins
John F. Higgins
1000 Main St., 36th Floor
Houston, Texas  77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Elizabeth R. McColm
Jacob A. Adlerstein
Alexander Woolverton
1285 Avenue of the Americas
New York, New York  10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in this case on January 12, 2016.

/s/John F. Higgins
John F. Higgins