**Exhibit A**

**Joint Plan of Sherwin Alumina Company, LLC
and Sherwin Pipeline, Inc. Pursuant to Chapter 11 of the Bankruptcy Code**

**THIS PROPOSED PLAN IS NOT A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN OF THE DEBTORS IN THESE CHAPTER 11 CASES. THIS PROPOSED PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. ACCEPTANCES OF THIS PROPOSED PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. THIS PROPOSED PLAN, TOGETHER WITH A RELATED DISCLOSURE STATEMENT TO BE FILED IN CONNECTION HEREWITH, HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO AMENDMENT PRIOR TO SUCH APPROVAL BEING GRANTED. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PROPOSED PLAN FOR ANY PURPOSE BEFORE THE CONFIRMATION OF THIS PROPOSED PLAN BY THE BANKRUPTCY COURT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHERWIN ALUMINA COMPANY, LLC, *et al.*,[1] | § | Case No. 16-20012 (DRJ) |
| | § | |
| Debtors. | § | (Joint Administration Requested) |
| | § | |

## JOINT PLAN OF SHERWIN ALUMINA COMPANY, LLC AND
## SHERWIN PIPELINE, INC. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Dated:  January 11, 2016

James H.M. Sprayregen, P.C. (*pro hac vice* pending)
Gregory F. Pesce (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654

- and -

Joshua A. Sussberg, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022

*Proposed Counsel for the*
*Debtors and Debtors in Possession*

Zack A. Clement (TX Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond
Houston, Texas 77025

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sherwin Alumina Company, LLC (2376) and Sherwin Pipeline, Inc. (9047). The debtors' service address is: 4633 Highway 361, Gregory, Texas 78359.

**TABLE OF CONTENTS**

**Page**

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
AND GOVERNING LAW**................................................................................1
A. Defined Terms. .................................................................................1
B. Rules of Interpretation. ...................................................................10
C. Computation of Time. .....................................................................11
D. Governing Law. ..............................................................................11
E. Reference to Monetary Figures. ......................................................11
F. Controlling Document.....................................................................11

**ARTICLE II ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL FEE
COMPENSATION CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS**................11
A. Administrative Claims. ...................................................................11
B. Accrued Professional Compensation Claims. ...................................12
C. DIP Claims......................................................................................13
D. Priority Tax Claims..........................................................................13

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**...............13
A. Summary of Classification...............................................................13
B. Treatment of Claims and Interests. ................................................14
C. Special Provision Governing Unimpaired Claims. ...........................17
D. Elimination of Vacant Classes. .......................................................17
E. Voting Classes; Presumed Acceptance by Non-Voting Classes. ......17
F. Subordinated Claims. ......................................................................17
G. Controversies Regarding Impairment. ............................................17

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ...................................17
A. Restructuring Transactions...............................................................17
B. Sale Transaction. .............................................................................18
C. Sources of Plan Consideration. .......................................................18
D. Vesting of Assets. ...........................................................................18
E. General Settlement of Claims. .........................................................19
F. Cancellation of Securities and Agreements. ...................................19
G. Corporate Action.............................................................................19
H. Dissolution and Board of the Debtors. ...........................................19
I. Effectuating Documents; Further Transactions.................................20
J. Exemption from Certain Taxes and Fees. .......................................20
K. D&O Tail Insurance Policies............................................................20
L. Treatment of Causes of Action. ......................................................20
M. Wind Down and Dissolution of the Debtors. ..................................20
N. Plan Administrator. .........................................................................21
O. Wind Down Reserve. ......................................................................21

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......22
A. Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................22
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.......................22
C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases...................22
D. Insurance Policies. ..........................................................................23
E. Modifications, Amendments, Supplements, Restatements, or Other Agreements..........23
F. Reservation of Rights.......................................................................23
G. Nonoccurrence of Effective Date....................................................23

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** .......................................24

i

A.     Timing and Calculation of Amounts to Be Distributed. ............................................24
B.     Rights and Powers of the Debtors and the Plan Administrator. .............................24
C.     Delivery of Distributions and Undeliverable or Unclaimed Distributions. ............24
D.     Compliance with Tax Requirements/Allocations.....................................................25
E.     Claims Paid or Payable by Third Parties. ................................................................26
F.     Indefeasible Distributions. ......................................................................................26

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS**.................................................................................................**26**
A.     Allowance of Claims.................................................................................................26
B.     Claims Administration Responsibilities...................................................................27
C.     Estimation of Claims and Interests...........................................................................27
D.     Adjustment to Claims or Interests without Objection. .............................................27
E.     Disallowance of Claims. ..........................................................................................27
F.     Disputed Claims Reserve. ........................................................................................27
G.     Amendments to Claims. ...........................................................................................28
H.     No Distributions Pending Allowance........................................................................28
I.     Distributions After Allowance. ................................................................................28

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ......................**28**
A.     Settlement, Compromise, and Release of Claims and Interests**.** ............................28
B.     Release of Liens. ......................................................................................................29
C.     Releases by the Debtors. ..........................................................................................29
D.     Releases by Holders of Claims and Interests. .........................................................29
E.     Exculpation. .............................................................................................................30
F.     Injunction. ................................................................................................................30
G.     Protections Against Discriminatory Treatment. .......................................................30
H.     Setoffs. .....................................................................................................................31
I.     Recoupment. ............................................................................................................31
J.     Subordination Rights................................................................................................31
K.     Document Retention. ...............................................................................................31
L.     Reimbursement or Contribution. .............................................................................31

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**...........**31**
A.     Conditions Precedent to Confirmation.....................................................................31
B.     Conditions Precedent to the Effective Date. ............................................................32
C.     Waiver of Conditions. ..............................................................................................32

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**................................**32**
A.     Modification and Amendments. ...............................................................................32
B.     Effect of Confirmation on Modifications. ................................................................33
C.     Revocation or Withdrawal of the Plan. ....................................................................33

**ARTICLE XI RETENTION OF JURISDICTION** ........................................................................**33**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ......................................................................**35**
A.     Immediate Binding Effect. .......................................................................................35
B.     Additional Documents. ............................................................................................35
C.     Payment of Statutory Fees. ......................................................................................35
D.     Dissolution of Statutory Committees. ......................................................................35
E.     Reservation of Rights................................................................................................36
F.     Successors and Assigns............................................................................................36
G.     Service of Documents. .............................................................................................36
H.     Term of Injunctions or Stays....................................................................................37
I.     Entire Agreement. ....................................................................................................37
J.     Exhibits. ...................................................................................................................37

K.    Nonseverability of Plan Provisions. ............................................................................37
L.    Waiver or Estoppel. .........................................................................................................37

KE 39065609

Sherwin Alumina Company, LLC and Sherwin Pipeline, Inc., as debtors and debtors in possession, propose the following joint plan pursuant to chapter 11 of title 11 of the United States Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof.

The Debtors have requested consolidation for procedural purposes only for the Chapter 11 Cases.  Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, results of operations, historical financial information, and a summary and analysis of the Plan and certain related matters.  Each of the Debtors is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

# ARTICLE I
# DEFINED TERMS, RULES OF INTERPRETATION,
# COMPUTATION OF TIME, AND GOVERNING LAW

A.      *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.      "**Accrued Professional Compensation Claims**" means, at any given moment, all Claims for accrued fees and expenses for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.      "**Acquired Assets**" shall have the meaning set forth in the Purchase Agreement.

3.      "**Administrative Claim**" means a Claim (other than an Accrued Professional Compensation Claim) for costs and expenses of administration of the Estates pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred after the Petition Date and through the Effective Date, the Expense Reimbursement Amount, and fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including the fees of the U.S. Trustee payable pursuant to section 1930(a) of the Judicial Code.  Notwithstanding anything to the contrary herein, amounts owing pursuant to the DIP Orders shall not constitute Administrative Claims.

4.      "**Administrative Claims Bar Date**" means the first Business Day that is 15 days following the Effective Date, as such date may be extended from time to time with the prior written consent of the Plan Administrator and the Buyer.

5.      "**Administrative Claims Payment Date**" means, with respect to an Administrative Claim, the earlier of:  (a) on the Effective Date; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 15 days after the date on which an order Allowing such Administrative Claim becomes a Final Order; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court; or

6.      "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

7.      "**Allowed**" means with reference to any Claim or Interest, as applicable, (a) any Claim that has been listed on the Schedules as liquidated in amount and not Disputed or contingent and for which (i) no contrary Proof of Claim has been Filed, (ii) no objection to allowance, request for estimation, or other challenge has been interposed, or (iii) no motion to deem the Schedules amended has been Filed, (b)(1) any Proof of Claim or Proof of Interest that is timely Filed by the applicable Claims Bar Date, as to which no litigation (whether stayed or unstayed) is pending and to which no objection or other challenge has been or is interposed in accordance with the Plan or

such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or the Bankruptcy Court, if any, and (2) any Claim that is not subject to any applicable Claims Bar Date, as to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order or under the Plan, (e) any Claim that is not otherwise subject to disallowance under section 502(d) of the Bankruptcy Code, (f) any Claim arising from the recovery of property in accordance with sections 550 and 553 of the Bankruptcy Code and Allowed in accordance with section 502(h) of the Bankruptcy Code (unless such Claim is otherwise Disputed), (g) any Claim allowed by stipulation approved by the Bankruptcy Court, and/or (h) any Interest registered in the ownership register or otherwise on the Debtors' books and records, maintained by, or on behalf of, the Debtors as of the Voting Record Date.  Except as otherwise provided in the Plan, for purposes of determining the amount of an "**Allowed Claim**," there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset pursuant to applicable non-bankruptcy law or subject to recoupment.  Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not constitute "**Allowed Claims**" under the Plan unless otherwise specified in the Plan or by order of the Bankruptcy Court.  For any purpose under the Plan, unless specifically provided for in the Plan, a Claim that has been Allowed shall not include amounts constituting interest, penalties, or late charges arising from or relating to the period from and after the Petition Date.  Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated for which no Proof of Claim or Interest has been timely Filed and which is not included in subsections (a)-(h) herein, is not considered an Allowed Claim or Allowed Interest and shall be expunged without further action by the Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.      "**Assumed Liabilities**" shall have the meaning set forth in the Purchase Agreement.

9.      "**Auction**" has the meaning set forth in the Bid Procedures Order.

10.     "**Avoidance Actions**" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

11.     "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

12.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, pursuant to section 151 of the Judicial Code, the United States District Court for the Southern District of Texas.

13.     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chamber rules of the Bankruptcy Court.

14.     "**Bid Procedures**" means the bid procedures approved by the Bankruptcy Court, which shall be in form and substance acceptable to the Buyer in its reasonable discretion.

15.     "**Bid Procedures Order**" means the *Order (A) Approving and Authorizing the Debtors to Enter into and Perform Under the Stalking Horse Purchase Agreement, (B) Approving Bidding Procedures, (C) Approving Bid Protections, (D) Scheduling Bid Deadlines and an Auction, and (E) Approving the Form and Manner of Notice Thereof* [Docket No. __].

16.     "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

17.     "**Buyer**" shall have the meaning set forth in the Purchase Agreement.

KE 39065609

18.     "**Buyer Liability Amount**" means Cash in the amount as set forth for the meaning of the term "Buyer Liability Amount" in the Purchase Agreement.

19.     "**Cash**" means the legal tender of the United States or the equivalent thereof.

20.     "**Causes of Action**" means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

21.     "**Certificate**" means any instrument evidencing a Claim or Interest.

22.     "**Chapter 11 Cases**" means the jointly administered chapter 11 cases of the Debtors pending before the Bankruptcy Court under the lead case of Sherwin Alumina Company, LLC, *et al.*, No. 16-20012 (__) (Bankr. S.D. Tex.).

23.     "**Claim**" means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against a Debtor.

24.     "**Claims Bar Date**" means the date established by the Bankruptcy Court by which Proofs of Claim must have been Filed, as ordered by the Bankruptcy Court.

25.     "**Claims Register**" means the official register of Claims maintained by the Notice and Claims Agent.

26.     "**Class**" means a category of Holders of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

27.     "**Closing Cash Payment**" shall have the meaning set forth in the Purchase Agreement.

28.     "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Cases.

29.     "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order.

30.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider entry of a Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

31.     "**Confirmation Order**" means a Final Order of the Bankruptcy Court, in form and substance acceptable to the Debtors and the Buyer, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32.     "**Consummation**" means the occurrence of the Effective Date for the Plan.

33.     "**Committee**" means the official committee of unsecured creditors appointed in the Chapter 11 Cases (if any).

34.     "**Cure Amounts**" means all amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

3

35.     "**Cure Notice**" means a notice that is consistent with the Bid Procedures Order and sets forth the proposed Cure Amount under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed or assumed and assigned by the Debtors under the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code, as applicable, which notice shall include procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, Cure Amounts to be paid in connection therewith, and procedures for resolution by the Court of any related disputes.

36.     "**D&O Liability Insurance Policies**" means all insurance policies for directors, members, trustees, officers, and managers' liability maintained by the Debtors as of the Effective Date.

37.     "**Debtors**" means, collectively, Sherwin Alumina and Sherwin Pipeline.

38.     "**DIP Claims**" means any and all Claims for principal and interest under the DIP Facility, including amounts owing pursuant to the DIP Orders.

39.     "**DIP Facility**" means the Debtors' proposed $40-million debtor-in-possession financing facility, by and among Sherwin Alumina, as borrower, and Sherwin Pipeline, as guarantor, and the DIP Lender, approved by the Bankruptcy Court pursuant to the DIP Orders.

40.     "**DIP Lender**" means Commodity Funding, LLC, in its capacity as lender under the DIP Facility.

41.     "**DIP Orders**" means, collectively:  (a) the *Interim Order (I) Authorizing Debtor to (A) Obtain Post-Petition Secured Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Super-Priority Administrative Expense Claims, (III) Granting Adequate Protection to Pre-Petition Secured Lender, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [Docket No. [_]]; (b) the *Final Order (I) Authorizing Debtor to (A) Obtain Post-Petition Secured Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Super-Priority Administrative Expense Claims, (III) Granting Adequate Protection to Pre-Petition Secured Lender, and (IV) Modifying the Automatic Stay* [Docket No. [_]]; and (c) any other order entered by the Bankruptcy Court approving the DIP Facility.

42.     "**Disclosure Statement**" means the *Disclosure Statement for the Joint Plan of Sherwin Alumina Company, LLC and Sherwin Pipeline, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code [Docket No. [_]].

43.     "**Disclosure Statement Order**" means the Final Order entered by the Bankruptcy Court [Docket No. [_]], in form and substance acceptable to each Debtor and the Buyer, approving the adequacy of the Disclosure Statement and certain procedures for solicitation of votes on the Plan and granting related relief.

44.     "**Distribution Record Date**" means the record date set forth in the Disclosure Statement Order for purposes of making distributions under the Plan on account of Allowed Claims.

45.     "**Disputed**" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.  For the avoidance of doubt, a Disputed Claim or Interest shall not include any Claim or Interest that has been disallowed under the Plan or by Final Order.

46.     "**Disputed Claims Reserve**" means an appropriate reserve, to be determined by the Debtors and the Buyer, unless otherwise ordered by the Bankruptcy Court, for distributions on account of Disputed Claims that are Excluded Liabilities and that are subsequently Allowed after the Effective Date.  To the extent that any General Unsecured Claim is Disputed, on the Effective Date, the Debtors or the Plan Administrator shall transfer the pro rata portion of such Claim's distribution under the Plan to the Disputed Claims Reserve, where such amount shall be held in trust for the benefit of such Holder pending resolution by a Final Order or as otherwise agreed between the the Debtors or Plan Administrator, as applicable, and such Holder.  To the extent that a Disputed Claim ultimately is disallowed by a Final Order, any amount held in the Disputed Claims Reserve on account of such Claim shall be distributed in accordance with the Article III of the Plan.

47.     "**Disputed Claims Reserve Amount**" means the amount of assets determined by the Debtors and the Buyer that would likely have been distributed to the Holders of all applicable Disputed Claims against the Debtors as if such Disputed Claims against the Debtors had been Allowed Claims against the Debtors on the Effective Date, with the amount of such Allowed Claims to be determined, solely for the purposes of establishing reserves and for maximum distribution purposes, to be (a) the lesser of (i) the asserted amount of each Disputed Claim against the Debtors as scheduled by the Debtors or, if and solely to the extent a non-duplicative Proof of Claim was filed in an asserted amount greater than the scheduled amount, the asserted amount filed with the Bankruptcy Court as set forth in such non-duplicative Proof of Claim or as provided by the parties to the Debtors as further information with respect to the Proof of Claim, and (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or ordered by other order of the Bankruptcy Court, or (b) the amount otherwise agreed to by the Debtors, the Buyer and the Holder of such Disputed or unliquidated Claim for reserve purposes.

48.     "**Effective Date**" means, with respect to the Plan, the date that is a Business Day selected by the Debtors and the Buyer on or after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A of the Plan have been satisfied or waived (in accordance with Article IX.C of the Plan); and (c) the Debtors, with the consent of the Buyer, declare that the Plan is effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

49.     "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

50.     "**Estate**" means, as to each Debtor, the estate created for each Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

51.     "**Excluded Assets**" shall have the meaning set forth in the Purchase Agreement.

52.     "**Excluded Liabilities**" shall have the meaning set forth in the Purchase Agreement.

53.     "**Exculpated Claim**" means any claim related to any act or omission in connection with, relating to, or arising out of:  (a) the Chapter 11 Cases, the Restructuring Documents, and/or the Restructuring Transactions; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases, the Restructuring Documents, and/or the Restructuring Transactions; (c) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the Chapter 11 Cases, the Restructuring Documents, or the Restructuring Transactions; (d) the pursuit of Consummation; and/or (e) the Filing, administration, and/or implementation of the Chapter 11 Cases, the Restructuring Documents, and/or the Restructuring Transactions or the distribution of property in connection therewith or thereunder.

54.     "**Executory Contract**" means a contract to which a Debtor is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

55.     "**Expense Reimbursement Amount**" shall have the meaning set forth in the Purchase Agreement.

56.     "**Expired CBA**" means the collective bargaining agreement between Sherwin and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, on behalf of, its Local Union No. 235A, entered on February 9, 2011, with a stated term through July 30, 2014, covering terms and conditions of employment for certain hourly employees at Gregory, Texas manufacturing facility, which expired on October 11, 2014.

57.     "**Federal Judgment Rate**" means the federal judgment rate in effect as of the Effective Date.

58.     "**File**," "**Filed**," or "**Filing**" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

59.     "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided,* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Bankruptcy Local Rules, may be filed relating to such order shall not prevent such order from being a Final Order; *provided, further*, that, with the exception of the Confirmation Order (which is addressed in Article IX) of the Plan, the Debtors reserve the right to waive any appeal period.

60.     "**General Unsecured Claim**" means any Claim that is not Secured and that is not:  (a) an Other Secured Claim; (b) a Prepetition Secured Credit Facility Claim; (c) an Administrative Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; (f) an Intercompany Claim; (g) a DIP Claim; (h) an Accrued Professional Compensation Claim; or (i) a Subordinated Claim.

61.     "**Governmental Unit**" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

62.     "**Holder**" means any Entity holding a Claim or an Interest.

63.     "**Impaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

64.     "**Independent Manager**" means Alan J. Carr, solely in his capacity as the independent manager for Sherwin Alumina.

65.      "**Intercompany Claim**" means any Claim against a Debtor held by another Debtor.

66.     "**Interest**" means the common stock or shares, limited liability company interests, limited partnership units, preferred interests, and any other equity, ownership or profits interests of any Debtor or non-Debtor subsidiary of a Debtor and options, warrants, rights or other securities or agreements to acquire the common stock or shares, limited liability company interests, or other equity, ownership or profits interests of any Debtor or non-Debtor subsidiary of a Debtor (whether or not arising under or in connection with any employment agreement).

67.     "**Interim Compensation Order**" means the Final Order entered by the Bankruptcy Court [Docket No. [_]], authorizing the Debtors, on an interim basis, to compensate the Professionals for services rendered through the Confirmation Date and to reimburse the Professionals for expenses incurred in connection with any such services.

68.     "**Judicial Code**" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

69.     "**Lien**" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

70.     "**Net Sale Proceeds**" means, solely to the extent the Stalking Horse Bidder is not the Successful Bidder, the Sale Proceeds less Cash in an amount equal to the aggregate amount of any of the following to the extent they do not constitute Assumed Liabilities pursuant to the Purchase Agreement:  (a) Allowed Secured Claims; (b) Allowed Administrative Claims; (c) Accrued Professional Compensation Claims (and any estimates thereof submitted in accordance with Article II.B hereof); (d) Allowed Priority Tax Claims; (e) Allowed Other Priority Claims; (f) the Closing Cash Payment; and (g) any other Cash to be paid or reserved for payments pursuant to and in accordance with the Plan and the Purchase Agreement (including the Wind Down Reserve).

71.     "**Notice and Claims Agent**" means Kurtzman Carson Consultants LLC, in its capacity as such.

72.     "**Ordinary Course Professional**" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

73.     "**Ordinary Course Professionals Order**" means the Final Order entered by the Bankruptcy Court [Docket No. [_]], authorizing the Debtors to compensate the Ordinary Course Professionals for services rendered before or on the Confirmation Date and to reimburse the Ordinary Course Professionals for expenses incurred in connection with such services.

74.     "**Other Priority Claim**" means any Claim against any Debtor entitled to priority in right of payment under section 507 of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

75.     "**Other Secured Claim**" means any Secured Claim against any of the Debtors that is not a DIP Claim or a Prepetition Secured Credit Facility Claim.

76.     "**Petition Date**" means January 11, 2016.

77.     "**Plan**" means this *Joint Plan of Sherwin Alumina Company, LLC and Sherwin Pipeline, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*, including the Plan Supplement which is incorporated herein by reference and made part of this Plan as if set forth herein, as each may be modified, supplemented, or waived from time to time in accordance with the respective terms thereof.

78.     "**Plan Administrator**" means the Entity selected by the Debtors and the Buyer to make or facilitate distributions that are to be made on and after the Effective Date and effectuate the Wind Down.

79.     "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, each in form and substance acceptable to the Debtors and the Buyer, including:  (a) the Purchase Agreement; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the identity of the Plan Administrator and the compensation of the Plan Administrator; (d) subject to appropriate confidentiality restrictions, the amount of the Wind Down Reserve; and the (e) Retained Causes of Action List.

80.     "**Purchase Price**" shall have the meaning set forth in the Purchase Agreement.

81.     "**Prepetition Secured Credit Facility**" means the revolving credit facility of up to the aggregate principal amount of $95,000,000 (including letter of credit availability and amounts guaranteed by affiliates of the Pre-Petition Lender, the total aggregate amount of which shall not exceed $14,200,000) provided by the Prepetition Secured Lender to the Debtors in accordance with the Prepetition Secured Credit Facility Documents.

82.     "**Prepetition Secured Credit Facility Agreement**" means that certain Credit Agreement, dated as of July 1, 2009, as amended, modified, and restated from time to time in accordance with the terms thereof, between Sherwin Alumina, as borrower, and the Prepetition Secured Lender, as lender.

83.     "**Prepetition Secured Credit Facility Documents**" means, collectively, the Prepetition Secured Credit Facility Agreement and all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith.

84.     "**Prepetition Secured Credit Facility Claims**" means any and all Claims arising under or related to the Prepetition Secured Credit Facility and the Prepetition Secured Credit Facility Documents.

85.     "**Prepetition Secured Lender**" means Commodity Funding, LLC, in its capacity as lender under the Prepetition Secured Credit Facility Agreement.

86.     "**Priority Tax Claim**" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

87. "**Professional**" means an Entity: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

88. "**Professional Fee Escrow Account**" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount funded from cash collateral subject to, and solely to the extent provided under, the DIP Orders, which account shall be established by the Debtors on or before the Effective Date and held in trust for the Professionals solely for the purpose of paying Allowed and unpaid Accrued Professional Compensation Claims.

89. "**Professional Fee Escrow Amount**" means the aggregate Accrued Professional Compensation Claims through the Effective Date, as estimated in accordance with Article II.B of the Plan.

90. "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

91. "**Proof of Interest**" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

92. "**Purchase Agreement**" means the Asset Purchase Agreement by and between the Debtors and the Buyer, in form and substance acceptable to the Debtors and the Buyer, as the same may be amended, modified, or supplemented from time to time in accordance with the terms thereof, or such other purchase agreement that is approved by the Bankruptcy Court.

93. "**Released Party**" means each of: (a) Allied Alumina, LLC; (b) the Prepetition Secured Lender, solely in its capacity as such; (c) the DIP Lender, solely in its capacity as such; (d) the Stalking Horse Bidder, solely in its capacity as such; (e) the Buyer; and (f) with respect to each of the foregoing entities in clauses (a) through (e), such Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case in their capacity as such; and (g) the Debtors' predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such.

94. "**Releasing Parties**" means each of the following in its capacity as such: (a) Allied Alumina, LLC; (b) the DIP Lender, in its capacity as such; (c) the Prepetition Secured Lender, in its capacity as such; (d) the Stalking Horse Bidder, in its capacity as such; (e) the Buyer; (f) those Holders of Claims and Interests that are deemed to accept the Plan; (g) all Holders of Claims and Interests who vote to accept the Plan; (h) all Holders of Claims and Interests in voting classes who abstain from voting on the Plan <u>and</u> who do not opt out of the releases provided by the Plan; (i) with respect to each of the foregoing entities in clauses (a) through (h), such Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; and (i) the Debtors' current and former Affiliates, subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such.

95. "**Restructuring Documents**" means the Bid Procedures Order, the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, and the Purchase Agreement, and the various agreements and other documentation formalizing the Plan, which agreements and other documentation shall be in form and substance acceptable to the Debtors and Buyer in their reasonable discretion.

96.    "**Restructuring Transactions**" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors determine to be necessary or desirable to implement the terms of the Restructuring Documents, including the Auction and the Sale Transaction.

97.    "**Retained Cash**" shall have the meaning set forth in the Purchase Agreement.

98.    "**Retained Causes of Action List**" means the non-exhaustive list of Causes of Action to be retained under the Plan.

99.    "**Sale Proceeds**" means the Cash proceeds of the Sale Transaction payable to the Debtors by the Buyer upon the closing under the Purchase Agreement.

100.    "**Sale Transaction**" means transactions between the Debtors and the Buyer, as set forth in the Purchase Agreement.

101.    "**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors and Buyer from time to time in accordance with the Purchase Agreement.

102.    "**Schedules**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

103.    "**Secured**" means when referring to a Claim secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order or the Plan, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

104.    "**Security**" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

105.    "**Sherwin Alumina**" means Sherwin Alumina Company, LLC, a Debtor in the Chapter 11 Cases.

106.    "**Sherwin Pipeline**" means Sherwin Pipeline, Inc., a Debtor in the Chapter 11 Cases.

107.    "**Stalking Horse Bidder**" means shall have the meaning ascribed to it in the Bid Procedures Order.

108.    "**Stalking Horse Bidder Credit Bid Amount**" means the amount of the Credit Bid (as such term is defined in the Purchase Agreement).

109.    "**Subordinated Claims**" means any Claim that is subject to subordination, including any claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

110.    "**Successful Bidder**" means the Entity that the Debtors declare has submitted the highest or otherwise best bid for the Debtors' assets in accordance with the Bid Procedures Order.

111.    "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Texas.

112.    "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

KE 39065609

113.    "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

114.    "**United States**" means the United States of America, its agencies, departments, or agents.

115.    "**Utility Deposit**" means the adequate assurance deposits paid by the Debtors in compliance with the *Interim Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests* [Docket No. [_]] and the *Final Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests* [Docket No. [_]].

116.    "**Voting Record Date**" means the close of business on [_], 2016.

117.    "**Wind Down**" means the wind down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

118.    "**Wind Down Reserve**" shall have the meaning set forth in the Purchase Agreement.

B.    *Rules of Interpretation.*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns including the Plan Administrator as successor to the Debtors; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (11) any effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (12) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (13) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (14) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (15) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  References in the Plan to the Debtors shall mean the Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, as applicable.

10

C.      *Computation of Time.*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan or Confirmation Order.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control)*; provided,* that corporate or limited liability company governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.      *Controlling Document.*

Except as set forth in the Plan, to the extent that any provision of any other Restructuring Document or any document or other exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided,* that, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**ARTICLE II**
**ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL FEE COMPENSATION CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS**

A.      *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, the Plan Administrator, or the Buyer (to the extent an Allowed Administrative Claim remains unpaid as of the Effective Date), as applicable, to the extent an Allowed Administrative Claim has not already been paid in full in cash during the Chapter 11 Cases, on the Administrative Claims Payment Date, each Holder of an Administrative Claim to the extent such Claim is Allowed will receive in exchange for full and final satisfaction, settlement, release, and compromise (subject to Article VIII of the Plan) of its Claim the lesser of (x) payment in full in Cash and (y) payment of its pro rata portion of the Retained Cash with respect to such Administrative Claim.  The failure to object to confirmation of this Plan by a Holder of an Allowed Administrative Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.

**EXCEPT AS OTHERWISE PROVIDED BY A FINAL ORDER PREVIOUSLY ENTERED BY THE BANKRUPTCY COURT (INCLUDING THE DIP ORDERS AND BID PROCEDURES ORDER), UNLESS PREVIOUSLY FILED, REQUESTS FOR PAYMENT OF ADMINISTRATIVE CLAIMS, MUST BE FILED AND SERVED ON THE DEBTORS AND THE BUYER NO LATER THAN THE ADMINISTRATIVE CLAIMS BAR DATE PURSUANT TO THE PROCEDURES SPECIFIED IN THE CONFIRMATION ORDER AND THE NOTICE OF THE EFFECTIVE DATE.**

11

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE BAR DATE THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS, THE BUYER, OR THEIR RESPECTIVE PROPERTY.**

B.      *Accrued Professional Compensation Claims.*

1.      **Professional Fee Escrow Account.**

In accordance with this Article II.B of the Plan, prior to the Confirmation Date, the Debtors shall establish the Professional Fee Escrow Account.  The Debtors shall fund the Professional Fee Escrow Account with Cash in the amount of the aggregate Professional Fee Escrow Amount for all Professionals.  Subject to and in accordance with the terms of the DIP Orders, the Professional Fee Escrow Account shall be funded on the Effective Date from the Debtors' Cash on hand, including the proceeds of the DIP Orders and any Cash that does not constitute an Acquired Asset and, solely to the extent that the foregoing are not sufficient to fund the Accrued Professional Compensation Claims of the Holders of Allowed Claims entitled to Retained Cash, the Purchase Price (but not the Closing Cash Payment, if any) shall be increased by an amount in cash equal to the lesser of the amount of such deficit and $50,000.  If the Professional Fee Escrow Account does not contain sufficient cash to pay the Accrued Professional Compensation Claims of all of the Debtors' Professionals, each of the Debtors' Professionals shall be entitled to its pro rata portion of the amounts on deposit therein (based on the respective pro rata amount of the Accrued Professional Compensation Claims of each such Debtor Professional).  If Debtors' counsel's pro rata portion of such amount is less than the Accrued Professional Compensation Claim of Debtors' counsel, then Buyer shall pay an additional amount of cash equal to such deficit to the Professional Fee Escrow Account for the benefit of Debtors' counsel.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Such funds shall not be considered property of the Debtors' Estates or the Buyer; provided, that the Buyer shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow over the aggregate Allowed Accrued Professional Compensation Claims to be paid from the Professional Fee Escrow to the extent provided in the Purchase Agreement.

2.      **Final Fee Applications and Payment of Accrued Professional Compensation Claims**.

All final requests for payment of Claims of a Professional shall be Filed no later than the first Business Day that is 30 days after the Confirmation Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.  The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account after such Claims are Allowed by a Final Order  After all Accrued Professional Compensation Claims have been paid in full, the Final Order allowing such Accrued Professional Compensation Claims shall direct the escrow agent to return any excess amounts to the Buyer to the extent provided in the Purchase Agreement.

3.      **Professional Fee Escrow Amount**.

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Accrued Professional Compensation Claims before and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than three (3) Business Days before the Confirmation Date; *provided,* that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional; *provided,* that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional.  The total amount so estimated shall comprise the Professional Fee Escrow Amount.

12

4.      **Post-Confirmation Fees and Expenses**.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors; provided that each Professional seeking such payment shall promptly provide copies of its invoices to the Purchaser, and the Court shall have exclusive jurisdiction over any objections raised to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) days after receipt thereof. In the event that within ten (10) days from receipt of such invoices, the Purchaser raises an objection to a particular invoice, and the parties are unable to resolve any dispute regarding the fees and expenses included in such invoice, the Court shall hear and determine such dispute; provided, further, that payment of invoices shall not be delayed based on any such objections.  Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *DIP Claims.*

As of the Effective Date, and upon consummation of the Sale Transaction contemplated by the Purchase Agreement, the DIP Claims outstanding as of the Effective Date will be deemed waived, and the Holders thereof shall be deemed to have waived any such DIP Claims, in each instance in accordance with the terms of the Purchase Agreement.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Claims, Accrued Professional Fee Compensation Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.      *Summary of Classification.*

A Claim or Interest is classified in a particular Class pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  Except as provided below, the Plan shall apply as a separate Plan for each of the Debtors.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.  The Debtors reserve the right, subject to the consent of the Buyer, to withdraw the Plan with respect to one or more Debtors while seeking Confirmation or approval of the Plan with respect to all other Debtors.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Prepetition Secured Credit Facility Claims | Impaired | Entitled to Vote |
| Class 4A | General Unsecured Claims (Assumed Liabilities) | Impaired | Entitled to Vote |
| Class 4B | General Unsecured Claims (Excluded Liabilities) | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Interests in Sherwin Alumina | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests in Sherwin Pipeline | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests.*

The treatment provided to each Class relating to each of the Debtors for distribution purposes and voting rights are specified below.

1.    **Class 1—Other Priority Claims**.

(a)    *Classification*:  Class 1 consists of all Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Class 1 Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 1 Other Priority Claim, each such Holder shall receive payment in full in Cash on the Effective Date.

(c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    **Class 2—Other Secured Claims**.

(a)    *Classification*:  Class 2 consists of all Other Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Class 2 Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 2 Other Secured Claim, each such Holder shall receive either:

(i)    payment in full in Cash;

(ii)    reinstatement of such Claim; or

14

    (iii)  other treatment rendering such Claim Unimpaired.

  (c) *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3. **Class 3—Prepetition Secured Credit Facility Claims**.

  (a) *Classification*:  Class 3 consists of all Prepetition Secured Credit Facility Claims.

  (b) *Treatment*:  Except to the extent that a Holder of an Allowed Class 3 Prepetition Secured Credit Facility Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 3 Prepetition Secured Credit Facility Claim, each such Holder shall receive its pro rata share of:

    (i)  **Stalking Horse Bidder Is the Successful Bidder**:  if the Stalking Horse Bidder (and/or its Affiliates) is the Successful Bidder, the consideration provided in the Purchase Agreement; or

    (ii)  **Stalking Horse Bidder Is Not the Successful Bidder**:  if the Stalking Horse Bidder (and/or its Affiliates) is not the Successful Bidder, the Net Sale Proceeds.

  (c) *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4. **Class 4A—General Unsecured Claims (Assumed Liabilities)**.

  (a) *Classification*:  Class 4 consists of all General Unsecured Claims that are Assumed Liabilities.

  (a) *Treatment*:  Except to the extent that a Holder of an Allowed Class 4A General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 4A General Unsecured Claim, each such Holder shall receive its pro rata share of the Buyer Liability Amount with respect to such Claims.

  (b) *Voting*:  Class 4A is Impaired under the Plan.  Holders of Allowed Claims in Class 4A are entitled to vote to accept or reject the Plan.

5. **Class 4B—General Unsecured Claims (Excluded Liabilities)**.

  (a) *Classification*:  Class 4B consists of all General Unsecured Claims that are Excluded Liabilities.

  (b) *Treatment*:  Except to the extent that a Holder of an Allowed Class 4B General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Class 4B General Unsecured Claim, each such Holder shall receive:

    (i)  **Class 4B Votes to Accept the Plan**:  if Class 4B votes to accept the Plan, its pro rata share of the Closing Cash Payment.

(i)     **Class 4B Rejects the Plan**: if Class 4B does not vote to accept the Plan, all Class 4B General Unsecured Claims shall be cancelled without any distribution on account of such Claim on the Effective Date.

(c)     *Voting*: Class 4B is Impaired under the Plan. Holders of Allowed Claims in Class 4B are entitled to vote to accept or reject the Plan.

6.     **Class 5—Intercompany Claims**.

(a)     *Classification*: Class 5 consists of all Intercompany Claims.

(b)     *Treatment*: Class 5 Intercompany Claims shall be cancelled without any distribution on account of such Claims.

(c)     *Voting*: Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.     **Class 6—Subordinated Claims**.

(a)     *Classification:* Class 6 consists of all Subordinated Claims.

(b)     *Treatment:* On the Effective Date, all Class 6 Subordinated Claims shall be cancelled without any distribution on account of such Claims.

(c)     *Voting:* Class 6 is Impaired under the Plan. Holders of Claims in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

8.     **Class 7—Interests in Sherwin Alumina**.

(a)     *Classification:* Class 7 consists of all Interests in Sherwin Alumina.

(b)     *Treatment*: On the Effective Date, all Class 7 Allowed Interests in Sherwin Alumina shall be deemed cancelled, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution on account of such Interests.

(c)     *Voting*: Class 7 is Impaired under the Plan. Holders of Interests in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

9.     **Class 8—Interests in Sherwin Pipeline**.

(a)     *Classification:* Class 8 consists of all Interests in Sherwin Pipeline.

(b)     *Treatment*: On the Effective Date, all Class 8 Allowed Interests in Sherwin Pipeline shall be deemed cancelled, and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution on account of such Interests.

(c)     *Voting*: Class 8 is Impaired under the Plan. Holders of Interests in Class 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

KE 39065609

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Buyer, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.  Unimpaired Claims shall remain Disputed Claims under the Plan until such claims are Allowed.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

F.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, with the consent of the Buyer, such consent not to be unreasonably withheld or conditioned, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.      *Controversies Regarding Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Restructuring Transactions.*

On or before the Effective Date, the Debtors are authorized, without further order of the Bankruptcy Court but subject to the consent of the Buyer if such action affects the Sale Transaction, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and the Purchase Agreement, including:  (1) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) rejection or assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (5) the consummation of the transactions contemplated by the Purchase Agreement.

B.     *Sale Transaction.*

On the Effective Date, the Debtors shall be authorized to consummate the Sale Transaction pursuant to the terms of the Purchase Agreement and the Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Debtors and the Buyer, as applicable, may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

C.     *Sources of Plan Consideration.*

All amounts necessary for the Debtors and the Buyer, as applicable, to make payments or distributions pursuant hereto shall be obtained from the Cash of the Debtors (subject to the terms of the Purchase Agreement and the DIP Orders), the Sale Proceeds, payments made directly by the Buyer on account of any Assumed Liabilities pursuant to the Purchase Agreement, the Closing Cash Payment (if any), and payments of Cure Amounts (if any) made by the Buyer pursuant to sections 365 or 1123 of the Bankruptcy Code.  Unless otherwise agreed, distributions required by this Plan on account of Allowed Claims that are Assumed Liabilities shall be the sole responsibility of the Buyer to the extent such Allowed Claim is Allowed against the Debtors.

1.     **Stalking Horse Credit Bid**.

If the Stalking Horse Bidder is the Successful Bidder, the Stalking Horse Bidder shall credit bid the Stalking Horse Credit Bid Amount in accordance with the Purchase Agreement and Bid Procedures Order.

2.     **Payment of Sale Proceeds by the Buyer**.

On the Effective Date, the Buyer shall pay to the Debtors the Sale Proceeds as and to the extent provided for in the Purchase Agreement.  Thereafter, the Sale Proceeds shall be distributed in accordance with Article III of the Plan.

3.     **Assumed Liabilities**.

On the Effective Date, the Buyer shall make all payments on account of any Assumed Liabilities pursuant to and in accordance with the Purchase Agreement and the Debtors shall not have any obligation to make any payment or other distribution on account of any Claims that are Assumed Liabilities.

4.     **Payment of Cure Amounts**.

On the Effective Date, the Buyer shall pay all Cure Amounts, if any, pursuant to sections 365 or 1123 of the Bankruptcy Code and in accordance with the Purchase Agreement.  The Debtors shall not have any obligation to make any payment or other distribution on account of any Cure Amounts.

5.     **Utility Deposits**.

On the Effective Date, the Utility Deposits, in accordance with the Purchase Agreement, shall be released to the Estates and be used to fund distributions under the Plan.

D.     *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property of the Estates to be acquired by the Buyer in the Purchase Agreement shall be preserved and shall vest in the Buyer, free and clear of all Liens, Claims, charges, and other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan or the Purchase Agreement, the Debtors and the Buyer may operate their businesses and use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**FOR THE AVOIDANCE OF DOUBT, ON AND AFTER THE EFFECTIVE DATE, NEITHER THE BUYER NOR ANY OF ITS AFFILIATES SHALL BE DEEMED TO BE A SUCCESSOR TO OR MERE CONTINUATION OF ANY DEBTOR FOR ANY PURPOSE UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING WITH RESPECT TO ANY CLAIMS AGAINST OR LIABILITIES, OBLIGATIONS, AND/OR COMMITMENTS OF ANY DEBTOR UNDER THE EXPIRED CBA OR ANY OTHER COLLECTIVE BARGAINING OR SIMILAR AGREEMENT.**

E.      *General Settlement of Claims.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

F.      *Cancellation of Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan or the Purchase Agreement, all notes, instruments, Certificates, and other documents evidencing, or in any way related to, Claims or Interests shall be canceled and the obligations of the Debtors thereunder or in any way related thereto shall be released, settled, and compromised*; provided,* that the survival of any rights or notes, instruments, Certificates, and other documents evidencing Claims or Interests shall not give rise to any Claims against the Debtors, the officers, managers, directors, representatives, and agents of the Debtors, or the Plan Administrator for fees, expenses, or otherwise.

G.      *Corporate Action.*

Upon the Effective Date and without limiting any rights and remedies of the Debtors under this Plan or applicable law, the Buyer may structure the restructuring consummated pursuant to the Plan as a purchase of all of the Debtors' assets, which purchase may be structured as a taxable transaction for United States federal income tax purposes and shall be deemed consummated on the Effective Date.   Upon the Effective Date, all actions contemplated by the Plan and Purchase Agreement shall be deemed authorized and approved in all respects, including the implementation of the Restructuring Transactions.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Plan Administrator or the Debtors in connection with the Plan or Purchase Agreement shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, members, trustees, officers, or managers of the Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan or Purchase Agreement (or necessary or desirable to effect the transactions contemplated by the Plan or Purchase Agreement) in the name of and on behalf of the Debtors, including any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.G of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

H.      *Dissolution and Board of the Debtors.*

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, and members and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, and managers, as applicable, of the Debtors, or the members of any Debtor. Each Debtor shall be dissolved as soon as practicable on or after the Effective Date, as applicable, but in no event later than the closing of the Chapter 11 Cases.  After the Effective Date, the Plan Administrator shall act as the sole officer, director, manager, or managing member of each Debtor.

KE 39065609

I.       *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtors and their respective directors, members, trustees, officers, and managers are, subject to the consent of the Buyer which shall not be unreasonably withheld,  authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan or Purchase Agreement, or any further notice to or action, order, or approval of the Bankruptcy Court.

J.       *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Such exemption specifically applies to:  (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; and/or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including:  (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; and/or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

K.       *D&O Tail Insurance Policies.*

As of the Effective Date, the Buyer shall purchase tail coverage under a directors' and officers' liability insurance policy with a term of two years for their current and former officers, directors, trustees, and members containing the same coverage that exists under the Debtors' current D&O Liability Insurance Policies (*i.e.*, a "tail policy").  After the Effective Date, none of the Debtors, the Plan Administrator, or Buyer, as applicable, shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including the "tail policy") in effect on the Effective Date, with respect to conduct occurring prior thereto, and all officers, directors, trustees, managers, and members of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such officers, directors, trustees, or members remain in such positions after the Effective Date.

L.       *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors reserve, and assign to the Buyer pursuant to the Purchase Agreement, any and all Causes of Action, including, but not limited to those Causes of Action listed on the Retained Causes of Action list, whether arising before or after the Petition Date, and preserve, and assign to the Buyer pursuant to the Purchase Agreement, the right to commence, prosecute, or settle such Causes of Action, notwithstanding the occurrence of the Effective Date.  The Buyer may pursue such Causes of Action in its sole discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Buyer will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

M.       *Wind Down and Dissolution of the Debtors.*

On and after the Effective Date, the Plan Administrator will implement any other provision of the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to

take any action necessary to wind down and dissolve the Debtors. After the Effective Date, the Debtors shall remain in existence for the sole purpose of dissolving and complying with its obligations under the Purchase Agreement. As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause each of the Debtors to comply with, and abide by, the terms of the Purchase Agreement; (2) file for each of the Debtors, a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of each Debtor under the applicable laws of its state of formation; (3) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for each of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (4) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan or Purchase Agreement. The filing by the Plan Administrator of any Debtor's certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of each such Debtor. Solely to the extent and subject to the limitations provided in the Purchase Agreement, the Plan, and the Confirmation Order, the Buyer shall fund the Wind Down Reserve with funds to pay costs, expenses, or claims arising from or related to any Wind Down, including the costs and expenses associated with any Claims resolution or similar process following the Effective Date (whether undertaken pursuant to Article VII of the Plan or otherwise).

N.      *Plan Administrator.*

Before or on the Effective Date, the Plan Administrator shall be designated by the Debtors for the purposes of conducting the Wind Down pursuant to the terms of the Restructuring Documents and shall succeed to such powers as would have been applicable to the Debtors' officers, directors, managers, and shareholders, and each Debtor shall be authorized to be (and, upon the conclusion of the Wind Down, shall be) dissolved by the Plan Administrator. All property of the Estates not distributed to the Holders of Claims or Interests on the Effective Date, or transferred pursuant to the Purchase Agreement, shall be transferred to the Plan Administrator and managed and distributed by the Plan Administrator pursuant to the Restructuring Documents and shall be held in the name of the Debtors' estates free and clear of all Claims and Interests except for rights to such distributions provided to Holders of Allowed Claims and Allowed Interests as provided in the Plan. Any and all reasonable and documented costs and expenses incurred by the Plan Administrator in connection with the Wind Down shall be paid from the Wind Down Reserve, subject to the terms and conditions of the Restructuring Documents. The Plan Administrator shall only file tax returns and pay taxes required to be paid for each Debtor in jurisdictions where each such Debtor previously filed tax returns, unless the Plan Administrator determines that a tax return is required to be filed due to a change in law, fact, or circumstance on or after the Effective Date. Following the Effective Date and in the event of the resignation or removal, liquidation, dissolution, death, or incapacity of the Plan Administrator, the Buyer shall designate another Entity to become Plan Administrator and such Entity will become the successor Plan Administrator and, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator.

The Entity chosen to be the successor Plan Administrator shall have such qualifications and experience to enable the Plan Administrator to perform its obligations under the Restructuring Documents. The Plan Administrator shall be compensated and reimbursed for reasonable and documented costs and out-of-pocket expenses as set forth in, and in accordance with, the Restructuring Documents and on the terms set forth in the Plan Supplement.

O.      *Wind Down Reserve.*

Any and all reasonable and documented costs and out-of-pocket expenses incurred by the Plan Administrator in connection with the Wind Down shall be paid through the Wind Down Reserve, which shall be funded into one or more segregated accounts and shall be used to fund the administration and Wind Down of the Debtors' Chapter 11 Cases following the Effective Date; *provided,* that any balance remaining in the Wind Down Reserve upon entry of a decree closing the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code shall revert to the Buyer.

# ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than:  (1) those that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, which schedule can be modified in accordance with the Purchase Agreement; (2) those that have been previously assumed, assumed and assigned, or rejected by a Final Order; (3) those that are the subject of a motion to assume, assume and assign, or reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (4) those that are subject to a motion to assume, assume and assign, or reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such assumption, assumption and assignment, or rejection is after the Effective Date; (5) those Executory Contracts and Unexpired Leases that expired pursuant to the terms thereof before the Petition Date (including the Expired CBA, which expired in accordance with its terms as of October 11, 2014); or (6) those Executory Contracts and Unexpired Leases that are deemed assumed, assumed and assigned, or rejected under the Purchase Agreement.

Entry of the Confirmation Order shall constitute a Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as provided under the Purchase Agreement, Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan or Purchase Agreement are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within 30 days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, their Estates, the Plan Administrator, the Buyer or property of the foregoing parties, without the need for any objection by the Debtors, the Plan Administrator or the Buyer and without the need for any further notice to, or action, order, or approval of the Court.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims (Class 4B) and shall be treated in accordance with Article III of the Plan, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract and Unexpired Lease, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the Cure Amount, (2) the ability of the Buyer or any assignee, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

Within three (3) Business Days following entry of the Bid Procedures Order, the Debtors shall distribute, or cause to be distributed, Cure Notices of potential assumption and proposed Cure Amounts to the applicable third parties.  Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served and actually received by the Debtors and the Buyer  in the accordance with the terms of the Bid Procedures Order.  Any counterparty to an Executory Contract or Unexpired

KE 39065609

Lease that fails to object timely to the proposed assumption or the amount of the Cure Amount will be deemed to have assented to such assumption and the Cure Amount.

In any case, if the Court determines that the Allowed Cure Amount with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Buyer will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

D.      *Insurance Policies.*

All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan or Purchase Agreement, shall constitute an admission by the Debtors or the Buyer, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or the Buyer, as applicable, has any liability thereunder.

G.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

KE 39065609

# ARTICLE VI
# PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Debtors or the Plan Administrator, on behalf of the Debtors, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest plus any postpetition interest on such Claim or Interest payable in accordance with the Plan.

B.      *Rights and Powers of the Debtors and the Plan Administrator.*

1.      **Powers of the Plan Administrator**.

All distributions under the Plan shall be made by the Debtors or the Plan Administrator, as applicable.  The Debtors or the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Debtors are, or the Plan Administrator is, as applicable, so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors or the Plan Administrator, as applicable.

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, shall be empowered to subject to the terms of the Plan, as applicable:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Debtors or the Plan Administrator, as applicable, by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Debtors or the Plan Administrator to be necessary and proper to implement the provisions of the Plan.

2.      **Expenses Incurred On or After the Effective Date**.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney fees and expenses) made by the Plan Administrator shall be paid in Cash in accordance with the Purchase Agreement without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      **Record Date for Distribution**.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.       **Delivery of Distributions in General**.

Except as otherwise provided herein, the Debtors or the Plan Administrator, as applicable, shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided,* that the manner of such distributions shall be determined at the discretion of the Debtors or the Plan Administrator, as applicable; *provided, further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

3.       **Minimum; De Minimis Distributions**.

No Cash payment of less than $500.00, in the reasonable discretion of the Debtors or the Plan Administrator, as applicable, (in consultation with the Buyer) shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest.

4.       **Undeliverable Distributions and Unclaimed Property**.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors have, or the Plan Administrator has, as applicable, determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the applicable Debtor or the Plan Administrator, as applicable, automatically and without need for a further order by the Bankruptcy Court and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.  Upon the conclusion of the Wind Down, that any balance remaining in the Wind Down Reserve upon entry of a decree closing the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code shall revert to the Buyer.

5.       **Manner of Payment Pursuant to the Plan**.

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtors or the Plan Administrator, as applicable, by check or by wire transfer, at the sole and exclusive discretion of the Debtors or the Plan Administrator, as applicable.

D.       *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtors or the Plan Administrator, as applicable, shall request distributees to provide appropriate documentation that may be required for an exemption from withholding or reporting, and shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements unless an exception applies.  Notwithstanding any provision in the Plan to the contrary, the the Debtors or the Plan Administrator, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes is reasonable and appropriate.  The Debtors, in consultation with Buyer, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

E.      *Claims Paid or Payable by Third Parties.*

    1.      **Claims Paid by Third Parties**.

The Debtors or Plan Administrator, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or Plan Administrator, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Plan Administrator, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

    2.      **Claims Payable by Third Parties**.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.      **Applicability of Insurance Policies**.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.      *Indefeasible Distributions.*

Except as provided in Article VI(E)(1), any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance of Claims.*

After the Effective Date, each of the Debtors and, solely to the extent that any Claim or Interest constitutes an Acquired Asset, the Buyer, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or any Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

26

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan or the Purchase Agreement, after the Effective Date, the Debtors, the Plan Administrator, or the Buyer, as applicable, shall have the sole authority:  (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain exclusive jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Plan Administrator, as applicable, without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Buyer.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

F.      *Disputed Claims Reserve.*

On the Effective Date (or as soon thereafter as is reasonably practicable), the Debtors or the Plan Administrator, as applicable, shall deposit in the Disputed Claims Reserve the Disputed Claims Reserve Amount. For the avoidance of doubt, there shall be no reserve required for Claims against the Debtors, to the extent such Claims are Assumed Liabilities or are released, discharged, or otherwise extinguished pursuant to the Plan, nor shall there be any reserves, holdbacks, escrows, or indemnities arising from the Purchase Agreement or otherwise relating

to the Sale Transaction. The Plan Administrator shall administer the Disputed Claims Reserve and shall distribute amounts held in the Disputed Claims Reserve (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Disputed Claims as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date.

G.      *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors or the Plan Administrator, as applicable, and the Buyer, and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

I.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Debtors or the Plan Administrator, as applicable, shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in Article III.B of the Plan.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the

filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the Effective Date occurring.

B.      *Release of Liens.*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to or in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors and be assigned to the Buyer pursuant to the Purchase Agreement.

C.      *Releases by the Debtors.*

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtors and their Estates from any and all actions, claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Sale Transaction, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.

D.      *Releases by Holders of Claims and Interests.*

As of the Effective Date, except as otherwise provided in the Plan, and to the fullest extent authorized by applicable law, the Releasing Parties expressly, unconditionally, generally and individually and collectively release, acquit and discharge the Debtors, their Estates, and the Released Parties from any and all actions, claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the Sale Transaction, the Restructuring Transactions, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, or the Buyer, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents, or related agreements, instruments, or other documents (including, for the avoidance of doubt, providing any legal opinion

requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.       *Exculpation.*

Except as otherwise specifically provided in the Plan, each Debtor and each Released Party is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects each Debtor and each Released Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors, their Estates, and the Released Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with applicable law with regard to the restructuring of Claims and Interests in the Chapter 11 Cases and in connection with the Restructuring Transactions, the Sale Transaction, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments, or other documents  (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Plan, and the solicitation of the Plan and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.       *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan, or Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released pursuant to Article VIII.B, Article VIII.C or Article VIII.D of the Plan, compromised and settled pursuant to Article VIII.A of the Plan , or are subject to exculpation pursuant to Article VIII.E of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claim or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests unless such entity has timely Filed a Proof of Claim with the Bankruptcy Court preserving such right of setoff, subrogation, or recoupment; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests.

G.       *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before

the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Setoffs.*

Except as otherwise expressly provided for in the Plan, each Debtor, the Plan Administrator, or the Buyer, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or the Buyer, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to the Plan or otherwise); *provided,* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor, the Plan Administrator, or the Buyer, as applicable, of any such claims, rights, and Causes of Action that such Debtor, the Plan Administrator, or the Buyer, as applicable, may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor, the Plan Administrator, or the Buyer, as applicable, unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff.

I.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors, the Plan Administrator, or the Buyer, as applicable, unless such Holder actually has timely Filed a Proof of Claim with the Bankruptcy Court preserving such recoupment.

J.      *Subordination Rights.*

The classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and any such rights shall be settled, compromised, and released pursuant to the Plan.

K.      *Document Retention.*

On and after the Effective Date, the Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors; *provided*, that with respect to documents that are Acquired Assets of which the Debtors retain copies, the Debtors or the Plan Administrator, as applicable, may destroy such documents at the Buyer's sole cost and expense.

L.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

A.      *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

KE 39065609

1.      the Bankruptcy Court shall have entered the Confirmation Order;

2.      the Purchase Agreement shall not have been terminated in accordance with its terms.

B.     *Conditions Precedent to the Effective Date.*

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the Plan:

1.      the Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; *provided,* that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.      all documents and agreements necessary to implement the Plan, including all documents related to the Sale Transaction shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.      all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan and Purchase Agreement shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

4.      the Professional Fee Escrow Account shall have been funded with Cash in the amount of the aggregate Professional Fee Escrow Amount for all Professionals;

5.      the Wind Down Reserve or a portion thereof shall have been established and funded with Cash in accordance with the terms of the Purchase Agreement;

6.      the "tail policy" for current and former officers, directors, trustees, managers, and members referenced in Article IV.K of the Plan shall have been purchased;

7.      the Disputed Claims Reserve shall have been established and funded; and

8.      no termination event shall have occurred under the Purchase Agreement, and the Purchase Agreement shall not have been terminated in accordance with its terms.

C.     *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX of the Plan may be waived only by prior written consent of the Debtors and the Buyer, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. Upon the occurrence of all the conditions to Confirmation and Consummation set forth in this Article IX of the Plan, the Debtor and the Buyer shall immediately declare the Effective Date.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the prior written consent of the Buyer, reserve the right to modify the Plan, whether materially or immaterially, and seek Confirmation, in each instance, to the extent permitted under the Bankruptcy Code. Subject to certain restrictions and requirements set

forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, with the prior written consent of the Buyer, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X of the Plan.

B.      *Effect of Confirmation on Modifications.*

        Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan.*

        The Debtors, with the consent of the Buyer, reserve the right to revoke or withdraw the Plan with respect to one or more of the Debtors before the Confirmation Date or the Effective Date and to file subsequent plans under chapter 11 of the Bankruptcy Code.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then:  (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; *provided*, that such revocation or withdrawal shall not in any way limit, prejudice or affect the ability of the Debtors and the Buyer to consummate the Sale Transaction pursuant to section 363 of the Bankruptcy Code after revocation or withdrawal of the Plan in accordance with the Purchase Agreement.

# ARTICLE XI
# RETENTION OF JURISDICTION

        Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

        1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

        2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

        3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan,

any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts or Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.     Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.     Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.     Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.     Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.     Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.E of the Plan;

13.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or relate to the Plan, the Stalking Horse APA, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.     Enforce all orders previously entered by the Bankruptcy Court;

23.     To resolve any disputes arising under the Purchase Agreement or other documents related to the Sale Transaction;

24.     Hear any other matter not inconsistent with the Bankruptcy Code;

25.     Enter an order concluding or closing the Chapter 11 Cases; and

26.     Enforce the injunction, release, and exculpation provisions set forth in Article VIII of the Plan.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to Article IX of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Buyer, and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Buyer, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.     *Dissolution of Statutory Committees.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases (including the Committee) shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Debtors, the Plan Administrator, and the Buyer shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

KE 39065609

E.      *Reservation of Rights.*

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor or the Buyer with respect to the Plan or any other Restructuring Document shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or the Buyer with respect to the Holders of Claims or Interests before the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

1.      **the Debtors**:

Sherwin Alumina Company, LLC
Attn.: Thomas Russell
c/o Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Facsimile:  (312) 862-2200
Attention:  Gregory F. Pesce
E-mail address:  gregory.pesce@kirkland.com

2.      **the Buyer**:

c/o Commodity Funding, LLC
301 Tresser Blvd., #1500
Stamford, CT 06901
Attn:  Andrew Smith

With copies to:

Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061
Facsimile: (212) 697-1559
Attention: Steven J. Reisman, Shaya Rochester
E-mail addresses: sreisman@curtis.com, srochester@curtis.com

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, and such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except with respect to the transactions set forth in the  Purchase Agreement or as specifically set forth herein, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://www.kccllc.net/sherwin or the Bankruptcy Court's website at www.txsb.uscourts.gov.

K.      *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

L.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

KE 39065609

Respectfully submitted, as of the date first set forth above,

Dated:  January 11, 2016

Sherwin Alumina Company, LLC
(for itself and Sherwin Pipeline, Inc.)

By: _____
Name:      Thomas Russell
Title:       President and Chief Executive Officer

Prepared by:

James H.M. Sprayregen, P.C.
Gregory F. Pesce
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654

- and -

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022

*Proposed Counsel for the*
*Debtors and Debtors in Possession*

Zack A. Clement (TX Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond
Houston, Texas 77025

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*

38