IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re: <br><br> SHERWIN ALUMINA COMPANY, LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 16-20012 (DRJ) <br><br> (Jointly Administered) |

**NORANDA BAUXITE LIMITED'S EXPEDITED MOTION FOR RELIEF
FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(d)**

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY.  IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE.  IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING.  IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING.  EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.

EXPEDITED RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Noranda Bauxite Limited, a debtor and debtor in possession ("Noranda"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order granting relief from the automatic stay pursuant to 11 U.S.C. §§ 105(a) and 362(d) so that Noranda may impose Modified Pricing Terms[2] to its Bauxite Sales Agreement, dated as of

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sherwin Alumina Company, LLC (2376) and Sherwin Pipeline, Inc. (9047) (each a Debtor and, collectively, the "Debtors").  The Debtors' service address is: 4633 Highway 361, Gregory, Texas 78359.

[2] As used in the Motion, the term "Modified Pricing Terms" shall mean a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5272734v1

December 29, 2012, (as amended, the "Noranda Agreement") with Sherwin Alumina Company, LLC. ("Sherwin"), the debtor in the above-captioned chapter 11 case.  In support of this Motion, Noranda respectfully states as follows:

## PRELIMINARY STATEMENT

1. Facing the same severely depressed aluminum industry conditions as the Debtors in these cases, Noranda and affiliated companies have today filed their own chapter 11 petitions in the Eastern District of Missouri.[3]  As a debtor in possession, with fiduciary obligations to its estate and creditors, Noranda cannot continue to operate under the current pricing structure of the Noranda Agreement, which requires Noranda to sell bauxite at a substantial loss.  Without the Modified Pricing Terms, every ton of bauxite Noranda ships to the Debtors depletes the assets of Noranda's estate, and reduces the recovery available to its creditors.  Stated plainly, the current pricing structure—a contributing cause to Noranda's need to reorganize under chapter 11—calls into question Noranda's viability as a going concern.

2. While Noranda believes it is entitled (and likely required) to prevent the continued depletion of estate assets, by refusing to perform under the current pricing structure of the Noranda Agreement, it recognizes the unique situation presented in these cases: both parties to the contract are debtors in possession in separately administered chapter 11 cases.  Therefore, in an abundance of caution, and out of respect for the jurisdiction of this Court, Noranda requests relief from the automatic stay imposed in the Debtors' chapter 11 cases so that Noranda may cease shipping bauxite to the Debtors at the prices provided for in the Noranda Agreement and condition future performance upon the Debtors' agreement to the Modified Pricing Terms.[4]

---

[3] *In re Noranda Aluminum, Inc., et al., Debtors,* Chapter 11 Case No. 16-10083 (BSS).

[4] As described below, Noranda has filed a motion to reject the Noranda Agreement in its own chapter 11 case. This Motion seeks to prevent the harm Noranda's estate will suffer while the Rejection Motion is pending. To

5272734v1

Such action is necessary to avoid having Noranda's chapter 11 estate sustain massive losses for the benefit of the Debtors.

3. Granting the relief sought by Noranda would further the Debtors' stated goals by providing them with the opportunity to achieve the certainty they have sought since day one of these cases. Absent stay relief, the Debtors risk litigating their motion to assume the Noranda Agreement only to have that Agreement subsequently rejected in Noranda's own chapter 11 case.[5] By relieving Noranda from the current unprofitable pricing regime, the stage will be set for the parties to explore whether they can reach agreement on a sustainable pricing structure under which their contractual arrangements may proceed, thus benefitting both chapter 11 estates.

## JURISDICTION

4. Jurisdiction over these matters is proper pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested in this Motion are sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code").

## FACTUAL BACKGROUND

6. Noranda is principally involved in mining Jamaican bauxite, a raw material from which alumina and aluminum are made. Noranda's bauxite mining operation in Jamaica (the "St. Ann Facility") is operated by Noranda and owned by Noranda and Jamaica Bauxite Mining Ltd. ("JBM"), a Government of Jamaica ("GOJ") entity, as partners in Noranda

---

the extent the Rejection Motion is approved prior to the Court considering this Motion, this Motion may be rendered moot.

[5] *See* paragraph 12 below.

5272734v1

Jamaica Bauxite Partners ("NJBP").[6] Pursuant to a Mining Agreement between Noranda and NJBP dated September 30, 2004, NJBP is responsible for mining the bauxite at the St. Ann Facility and transferring to Noranda the amount of bauxite it requires each year. Some of the bauxite transferred to Noranda is used by Noranda's affiliates in their alumina manufacturing process and the remainder is sold to third parties, including the Debtors.

7.  Noranda sells a portion of the bauxite mined at the St. Ann Facility to Sherwin pursuant to the Noranda Agreement, which sets forth the parties' obligations with respect to Noranda's delivery and sale of bauxite. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

8.  The Noranda Agreement proved unprofitable to Noranda almost immediately after being executed on December 29, 2012. Noranda's forecasts at the time did not anticipate that the market, and consequently the contract price, would decline as swiftly and precipitously as it did over the course of the Agreement.

9.  The sale price under the Noranda Agreement, substantially diminished by a market in steep and unforeseen decline, has been consistently outweighed by the cost of production, including among other things salaries and benefits, fuel costs, capital expenditures, and production levies payable to the GOJ. ███████████████████████████████

---

[6] Noranda owns a 49% interest in NJBP and JBM owns the remaining 51% interest.

5272734v1

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████

10. ████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

11. Another factor frustrating Noranda's ability to staunch losses from the Noranda Agreement is Sherwin's practice of refusing to accept delivery of less than one hundred percent of the volume requirements it identifies to Noranda (its "Declared Volume") in a given calendar year—which Noranda must then hold for sale to Sherwin—and carrying over the remainder to be delivered in the following year subject to the price, terms, and conditions of the prior year's shipments. Noranda disputes that Sherwin has such a right under the Agreement, but nevertheless reserves the entire Declared Volume. The practical effect of this reservation is that Noranda cannot sell on the open market the bauxite which Sherwin refuses to accept but must

instead sell it to Sherwin in the following year at the previous year's prices, potentially foreclosing alternative sales which might have yielded a higher return for Noranda.[7]

12. Noranda has faced serious and insurmountable economic and liquidity pressures as a result of, among other things, the losses suffered under the Noranda Agreement and the collapsing aluminum market, leading it to commence its own chapter 11 case.  Among the motions filed concurrently with commencement of Noranda's chapter 11 case is a motion to reject the Noranda Agreement under section 365(a) of the Bankruptcy Code (the "Rejection Motion"), a copy of which is attached as Exhibit B.  Sherwin's pending motion to assume the Noranda Agreement is scheduled to be heard by this Court on March 1, 2016.  (Dkt. Nos. 21, 109.)

## ARGUMENT

13. "An executory contract is unenforceable against a Debtor-in-Possession who has not yet assumed the contract."  *In re Wilson*, 69 B.R. 960, 965 (Bankr. N.D. Tex. 1987); *accord In re Gunter Hotel Assocs.*, 96 B.R. 696, 700 (Bankr. W.D. Tex. 1988) (citing *N.L.R.B.* v. *Bildisco & Bildisco*, 465 U.S. 513, 532 (1984)); *In re El Paso Refinery, L.P.*, 196 B.R. 58, 72 (Bankr. W.D. Tex. 1996) ("Until an executory contract has been assumed or rejected the Code relieves the debtor of his duty to perform."); *see also U.S. ex rel. U.S. Postal Serv.* v. *Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 (8th Cir. 1994) (noting that prior to assumption an executory contract is enforceable "by the debtor but not against the debtor"); *In re FBI Distrib. Corp.*, 330 F.3d 36, 43 (1st Cir. 2003) ("Although during the Chapter 11 proceeding a prepetition executory contract remains in effect and enforceable against the nondebtor party to the contract, the contract is *unenforceable* against the debtor in possession unless and until the contract is

---

[7] Noranda reserves all rights, remedies and claims it may against the Debtors in connection with these and other practices by the Debtors in connection with the Noranda Agreement.

assumed.") (emphasis in original); *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992) (Prior to assumption, "the terms of an executory contract are temporarily unenforceable against the debtor.").

14. Noranda does not intend to assume the Noranda Agreement, indeed it has moved to reject it. Noranda cannot, therefore, be forced to continue performing under the Noranda Agreement's loss-inducing pricing regime. As a debtor in its own chapter 11 case, Noranda is entitled to unilaterally impose a modified, sustainable pricing structure that enables it to maximize the value of its estate, notwithstanding the automatic stay in this case. *See In re Nat'l Steel Corp.*, 316 B.R. 287, 306 (Bankr. N.D. Ill. 2004) (finding that prior to assumption debtor was not bound by the provisions of the executory contract and, therefore, was not prohibited from proposing a unilateral price increase, even though the contract counterparty was also a chapter 11 debtor.).

15. However, out of an abundance of caution and respect for this Court Noranda moves to lift the automatic stay in this case so that it may impose a rational price, as provided in the Modified Pricing Terms, for the bauxite it provides to the Debtors.

## I.   Cause Exists to Lift the Automatic Stay

16. Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay . . . by terminating, annulling, modifying, or conditioning such stay for cause . . . ." 11 U.S.C. § 362(d). "Cause" is not expressly defined by the Bankruptcy Code and therefore courts must determine on a case-by-case basis whether cause exists under the totality of circumstances. *See In re Reitnauer*, 152 F.3d 341, 343 (5th Cir. 1998); *In re WGMJR, Inc.*, 435 B.R. 423, 432 (Bankr. S.D. Tex. 2010). Ultimately, "the Bankruptcy Code gives the court broad discretion to

provide appropriate relief from the automatic stay as may fit the facts of a particular case." *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014)

17. Here, cause exists to lift the automatic stay to allow Noranda to modify the pricing terms of the Noranda Agreement.[8]  *First*, lifting the stay will serve the interests of judicial economy, and promote the expeditious, economical, and complete resolution of the issues.  *Second*, the harm Noranda will suffer if forced to perform under the current terms of the Noranda Agreement outweighs any harm the Debtors will suffer.

A. <u>Lifting the Stay Will Eliminate Duplicative Litigation.</u>

18. To the extent that it prevents Noranda from modifying the pricing terms under the Noranda Agreement, the automatic stay unquestionably hinders the expeditious and economical resolution of disputes concerning the future of such Agreement and should be lifted for this reason alone.  *Id.* at 112 ("[A] decision to lift the stay may be upheld on judicial economy grounds alone." (citing *In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994))).  There are currently two separate motions, in two different districts, involving the future of the same executory contract.  This Court's decision on whether or not the Debtors can assume the Noranda Agreement may be entirely undone by a decision in Noranda's case authorizing rejection.  The Court can prevent some, if not all, of this unnecessary and duplicative motion practice by allowing Noranda to modify the pricing structure of the Noranda Agreement.

---

[8] Among the relevant factors courts have examined to consider lifting an automatic stay for cause are (i) whether the other proceeding which will go forward in the absence of a stay involves the debtor as a fiduciary; (ii) whether a specialized tribunal has been established to hear the particular cause of action; (iii) whether the debtor's insurer has assumed full responsibility; (iv) whether the action primarily involves third parties; (v) whether the judgment claim arising from the other action is subject to equitable subordination; (vi) whether the movant's success would result in a judicial lien avoidable by the debtor; (vii) whether the proceedings have progressed to the point that parties are ready for trial; (viii) the interests of judicial economy and the expeditious and economical resolution of litigation; (ix) the impact of the stay on the parties and the balance of harm; (x) whether the relief will result in a partial or complete resolution of the issues; (xi) whether there is any connection with or interference with the bankruptcy case; and (xii) whether litigation in the other forum would

  B. <u>The Balance of Harms Weighs in Favor of Lifting the Stay.</u>

  19. Forcing Noranda to continue to perform under the Noranda Agreement's pricing terms presents an undue hardship to Noranda. When the balance of hardships tips in favor of the non-debtor, the court should grant relief from the automatic stay. *In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex.), *modified*, 176 B.R. 11 (Bankr. E.D. Tex. 1994). Determination of the balance of harms requires a fact-specific analysis of the circumstances. *See In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997). Here, the hardships tip in favor of Noranda.

  20. Specifically, between January 1, 2013—three days after the Noranda Agreement was executed—and December 31, 2015, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As described above, the production levy due to the GOJ doubled in 2015 without any associated price increase. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In short, Noranda simply does not have the capital to withstand further loss of this scale and such a burden cannot be borne by its own chapter 11 estate and creditors.

  21. Sherwin is directly responsible for the some of the losses Noranda has suffered. Its practice of announcing a Declared Volume in excess of amounts it is later willing to accept—purporting to carry over the remainder to be delivered in the following year under the previous year's terms, and alleging that Noranda must reserve the entire Declared Volume—has caused Noranda to withhold excess bauxite it might otherwise have sold at higher prices, thereby covering some of its losses. Instead, such bauxite is held hostage to Sherwin's future needs.

---

prejudice the interests of other creditors. Not all of these factors need to be examined in each case. *See In re Xenon*, 510 B.R. at 112; *In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994).

22. Sherwin, by contrast, is in a very different position. Its arguments in favor of assuming the Noranda Agreement and ensuring the parties' continued performance are largely premised on the availability of a steady supply of bauxite, and in particular on the Jamaican bauxite Noranda supplies. (*See* Dkt. No. 21 at 5–8.) But Noranda does not claim that it cannot continue to supply bauxite to Sherwin, only that it cannot do so while sustaining the massive losses that the current pricing regime imposes. That is a critical distinction because changing the Noranda Agreement's pricing terms will not affect availability of bauxite. Moreover, the scheduled expiration of the Noranda Agreement on December 31, 2017 means that Sherwin will soon have to negotiate a new agreement for its bauxite supply in any event. That approaching horizon undermines any argument that Sherwin might make that the Noranda Agreement's current terms are critical to its long-term survival.

23. Noranda, however, simply cannot wait. Lifting the stay so that Noranda may seek relief from the current pricing terms does not present Sherwin with a threat to its survival. Although it may not reap the benefits of a bargain-basement supply agreement, Sherwin may continue to receive the bauxite it claims it needs. Indeed, granting the requested relief should allow the parties an opportunity to reach a mutually satisfactory resolution that could aid both debtors in their efforts to reorganize successfully.

24. For these reasons, the Court should lift the automatic stay to permit Noranda to modify the pricing structure of the Noranda Agreement.

## BASIS FOR EXPEDITED RELIEF

25. For the reasons outlined herein, including, without limitation, the commencement of Noranda's chapter 11 case, the competing motions on the status of the Noranda Agreement, and the ongoing hardship to Noranda as a result of the continued

implementation of the Noranda Agreement, Noranda respectfully requests expedited consideration of this Motion.

\*   \*   \*

WHEREFORE, Noranda respectfully requests that the Court enter an order (i) granting relief from the automatic stay so that Noranda may alter the pricing terms of the Noranda Agreement in accordance with the Modified Pricing Terms and (ii) granting such further relief as may be just and necessary under the circumstances.

Respectfully submitted this 8th day of February, 2016.

**PORTER HEDGES LLP**

/s/ John F. Higgins
John F. Higgins
State Bar No. 09597500
Joshua W. Wolfshohl
State Bar No. 24038592
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331

- and –

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Alan W. Kornberg (*pro hac vice*)
Elizabeth R. McColm (*pro hac vice*)
Aidan Synnot (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Noranda Bauxite Limited*

5272734v1

## CERTIFICATE OF COMPLIANCE WITH BLR 4001-1(A)(1)

I hereby certify that, in compliance with BLR 4001-1(a)(1), based upon the number and tenor of disputes in these cases, the issues before the Court would not have been resolved by additional efforts to confer between counsel.  Counsel to Noranda, however, remains available to meet and confer with opposing counsel in good faith to resolve the issues herein.

Dated: February 8, 2016            By:     /s/ John F. Higgins
                                                   John F. Higgins

Doc#: US1:10463912v7
5272734v1