**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**NORANDA ALUMINUM, INC.,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-10083 (BSS)<br><br>(Joint Administration Requested)<br><br>Hearing Date & Time: TBD<br><br>Hearing Location: TBD |

**DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105(a) AND 365 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 6004 AUTHORIZING THE REJECTION OF
CERTAIN EXECUTORY CONTRACTS *NUNC PRO TUNC* TO THE PETITION DATE**

Noranda Aluminum, Inc. ("NAI") and its affiliated debtors and debtors in possession (each a "Debtor," and, collectively, the "Debtors") hereby move this Court, pursuant to sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, authorizing the Debtors to reject the executory contracts identified on Exhibit A, annexed hereto, *nunc pro tunc* to the date hereof (the "Petition Date"). In support of the motion (the "Motion"), the Debtors rely on the Declaration of Dale W. Boyles in Support of Chapter 11 Petitions and First Day Relief (the "First Day Declaration")[2] and the Declaration of Robert M. Caruso in Support of Debtors' Motion for an Order Pursuant to Sections 105(a) and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number and state of incorporation, are: Noranda Aluminum, Inc. (Del.; 5285), Gramercy Alumina Holdings Inc. (Del.; 1941), Gramercy Alumina Holdings II, Inc. (Del.; 2806), NHB Capital, LLC (Del.; 0777), Noranda Alumina LLC (Del.; 4769), Noranda Aluminum Acquisition Corp. (Del.; 8458), Noranda Aluminum Holding Corp. (Del.; 8550), Noranda Bauxite Ltd. (Jamaica), Noranda Bauxite Holdings Ltd. (St. Lucia), Noranda Intermediate Holding Corp. (Del.; 3238) and Norandal USA, Inc. (Del.; 6477). The address of the Debtors' corporate headquarters is 801 Crescent Centre Drive, Suite 600, Franklin, Tennessee 37067.

[2] The First Day Declaration is being filed substantially contemporaneous with this Motion and is incorporated herein by reference. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

365 of the Bankruptcy Code and Bankruptcy Rules 6004 Authorizing the Rejection of Certain Executory Contract *Nunc Pro Tunc* to the Petition Date (the "Caruso Declaration") and respectfully state as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory and legal predicates for the relief requested are sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 6004.

**Background**

3. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing the instant cases (the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee, examiner or official committee has been appointed in the Chapter 11 Cases.

5. Information regarding the Debtors' businesses, their capital and debt structure, and the events leading to the filing of the Chapter 11 Cases is contained in the First Day Declaration.

**The Agreements**

6. Prior to the Petition Date, the Debtors engaged in a review of their executory contracts, and as a result of their review to date, the Debtors have determined in their business judgment that the agreements listed on Exhibit A hereto (including any modifications,

2

amendments, addenda or supplements thereto, or restatements thereof, the "Agreements")[3] and described below are not necessary to, and would impose substantial burdens on, their ongoing business operations and restructuring efforts. The Debtors have additionally determined, in their business judgment, that they could not assume and assign the Agreements in a manner that would provide any economic benefit to the Debtors' estates.

7. At this time, the Debtors are requesting authority to reject two categories of Agreements: (i) agreements involving the New Madrid Facility (the "New Madrid Agreements") and (ii) an Agreement involving the St. Ann Facility.

**I.   New Madrid Agreements**

8. Debtors NAI and Noranda Aluminum Holding Corp. are parties to various sale and supply contracts listed on Exhibit A.

9. As described in the First Day Declaration, on August 4, 2015, a molten metal explosion occurred in the casthouse of the New Madrid Facility, where molten aluminum is converted into commodity and value added products (the "August Incident"). A portion of the casthouse suffered extensive damage, affecting the Debtors' entire production of extrusion billet, a product that earns fabrication premiums for the Debtors. While the Debtors were able to redirect their molten aluminum output to other products, the Debtors' are no longer able to produce extrusion billet.

10. Additionally, on January 7, 2016, the Debtors lost power to two of the three pot-lines for smelting primary aluminum at the New Madrid Facility when an electrical control circuit failed (the "January Incident" and, collectively with the August Incident, the "Incidents"). As a result, production was curtailed at these two pot-lines. The third pot-line was

---

[3] With respect to each Agreement, Exhibit A hereto lists, among other things, the applicable counterparty for the Agreement (each a "Counterparty").

3

not directly affected and its production has not been interrupted. Consequently, the Debtors had to take steps to move to a one pot-line operation and to reduce staffing to this lower level of production. The Debtors intend to continue a one pot-line operation at the New Madrid Facility until the Debtors exhaust their existing supplies and inventory, after which the Debtors will idle aluminum production at the New Madrid Facility.

11. The Incidents have dramatically altered the landscape at New Madrid. As a result of the August Incident, the Debtors can no longer produce extrusion billet, and as a result of the January Incident, the New Madrid facility will soon be idled. Therefore, the Debtors can no longer perform under the New Madrid Agreements, which were entered into at a time when the New Madrid Facility was fully operational, and seek to reject such contracts to relieve the Debtors' estates of the unnecessary burdens the New Madrid Agreements present.

## II. The Bauxite Contract

12. Debtor Noranda Bauxite Ltd. ("NBL") is a party to a long term bauxite sales agreement (the "Bauxite Contract"), dated December 29, 2012, with Sherwin Alumina Co., LLC ("Sherwin"). Pursuant to the Bauxite Contract, NBL provides bauxite to Sherwin on terms that are economically favorable to Sherwin and substantially unfavorable to NBL.

13. On January 11, 2016, Sherwin commenced a voluntary case under chapter 11 in the Bankruptcy Court for the Southern District of Texas. In its chapter 11 case, Sherwin filed a motion to assume the Bauxite Contract. *In re Sherwin Alumina Co., LLC*, No. 16-20012, Docket No. 21 (S.D. Tex. Jan. 11, 2016). According to Sherwin, it "believe[s] that their assets cannot operate under any conceivable alternative configuration—in chapter 11 or otherwise—without the continued supply of bauxite from Noranda." *Id*. ¶ 3.

4

14. As fully described in the Caruso Declaration, continued performance under the Bauxite Contract is no longer economically feasible for NBL. *See* Caruso Decl. 4–6; *see also* First Day Decl. ¶¶ 34–35. NBL loses money on every ton of bauxite it ships under the Bauxite Contract. *See* Caruso Decl. ¶¶ 4–5. Accordingly, the cost of performing under the Bauxite Contract is substantially more than the price the Debtors receive under it. *See id*. Accordingly, the Debtors seek to reject the Bauxite Contract to relieve the Debtors' estate of an unnecessary, substantial burden.

### Relief Requested

15. By this Motion, and pursuant to sections 105 and 365 the Bankruptcy Code, the Debtors seek entry of an order authorizing them to reject the Agreements,[4] *nunc pro tunc* to the Petition Date.

### Basis for Relief Requested

16. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB* v. *Bildisco & Bildisco*, 465 U.S. 513, 521 (1984), *superseded by statute as recognized in Am. Flint Glass Workers Union* v. *Anchor Resolution Corp.*, 197 F.3d 76, 82 (3d Cir.1999); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997). "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor in possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993).

---

[4] Due to confidential nature of the Agreements, the Debtors have not attached copies of the Agreements to this Motion. Upon request, the Debtors will provide copies of the Agreements to the Court and the U.S. Trustee.

5

17. Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease and, upon finding that a debtor has exercised its sound business judgment, regularly approve the rejection under section 365(a) of the Bankruptcy Code. *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the "business judgment" standard used to approve rejection of executory contracts); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n.16 (8th Cir. 1997) (same); *In re Steaks to Go, Inc.*, 226 B.R. 35, 37 (Bankr. E.D. Mo. 1998) (noting that a court should "order rejection if the rejection is based on the debtor or trustee's best business judgment in the circumstances."); *see also In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008); *In re Great Atl. & Pac. Tea Co., Inc.*, 472 B.R. 666, 672 (S.D.N.Y. 2012) ("[I]n reviewing a debtor's decision to assume a lease, the bankruptcy court 'plac[es] itself in the position of the . . . debtor-in-possession and determin[es] whether assuming [it] would be a good business decision or a bad one.'") (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993)).

18. However, as the Second Circuit in *Orion* recognized:

> At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues.

4 F.3d at 1098–99. *Accord In re Gateway Apparel, Inc.*, 210 B.R. 567, 570 (Bankr. E.D. Mo. 1997) ("The proceeding on a motion to assume an unexpired lease is summary in nature.") (citing *Orion*, 4 F.3d at 1099). Accordingly, to approve a motion to reject an executory contract, a court need only make a determination that the debtor is "acting on an informed basis, in good faith, and with the honest belief that" rejection is "in the best interests of" the debtor and its estate. *In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005).

6

19. Moreover, while court approval is a prerequisite for rejection of any executory contract, courts have recognized such an order may authorize a rejection as of the date the motion is filed. *See In re At Home Corp.*, 392 F.3d 1064, 1071 (9th Cir. 2004); *In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003); *In re Jamesway Corp.*, 179 B.R. 33, 38 (S.D.N.Y. 1995) (approving retroactive rejection where objector "caused the delay" by interposing an improper objection); *see also* 3 Collier on Bankruptcy ¶ 365.03[4] ("If retroactive approval of rejection is not permitted, bankruptcy courts face the prospect of requests for expedited determination of rejection motions as a matter of course in order to reduce administrative expenses."); *cf. Adelphia Bus. Solutions* v. *Abnos*, 482 F.3d 602, (2d Cir. 2007) (assuming, without deciding, that bankruptcy court has such authority); *In re Stonebridge Techs., Inc.*, 430 F.3d. 260, 273 (5th Cir. 2005) (suggesting bankruptcy courts have such authority). *But see In re Worths Stores Corp.*, 130 B.R. 531, 533 (Bankr. E.D. Mo. 1991) ("the effective date of a debtor's lease rejection is that on which the Court entered its order approving such rejection"). "[O]nly after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease." *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *In re Phila. Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) ("[T]he decision to grant retroactive rejection of a lease or contract is dictated by equitable considerations.").

20. *Nunc pro tunc* rejection of the Agreements is warranted under the circumstances of this case. The Agreements either provide no ongoing benefit to the Debtors' estates or provide benefits that are substantially less than the corresponding costs. Rejecting the Agreements will relieve the Debtors from performing under substantially unprofitable

7

agreements and, for all the reasons set forth herein, is clearly beneficial to the Debtors' estates and creditors.

21. The Debtors and their advisors have thoroughly considered the available alternatives to rejection of the Agreements and believe that the relief requested herein is necessary to maximize the value of the estates. In light of the foregoing, the Debtors respectfully request that the Court approve rejection of the Agreements pursuant to section 365(a) of the Bankruptcy Code as a sound exercise of their business judgment.

### Request for Waiver of Stay

22. Finally, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the immediate rejection of the Agreements is necessary to the success of the Chapter 11 Cases, and the Debtors' ability to implement their chapter 11 strategy. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

23. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the agent under the Debtors' ABL Agreement; (iii) counsel to the agent under the Debtors' Term Loan Agreement; (iv) counsel to the ABL DIP Agent; (v) counsel to the Term DIP Agent; (vi) counsel to the Term DIP Credit Parties; (vii) the indenture trustee for the Debtors' senior unsecured notes; (viii) the Internal Revenue Service; (ix) the Securities and Exchange Commission; (x) the United States Department of Labor; (xi) the United States Attorney's Office for the Eastern District of Missouri; (xii) parties to all the Agreements; and (xiii) the holders of

the thirty (30) largest unsecured claims against the Debtors, on a consolidated basis (collectively, the "Notice Parties"). Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-3(A)(1). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

WHEREFORE, the Debtors respectfully request the entry of an order granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: February 8, 2016<br>St. Louis, Missouri | Respectfully submitted,<br>CARMODY MACDONALD P.C. |

    */s/ Christopher J. Lawhorn*
Christopher J. Lawhorn, #45713MO
Angela L. Drumm, #57678MO
Colin M. Luoma, #65000MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8660
cjl@carmodymacdonald.com
ald@carmodymacdonald.com
cml@carmodymacdonald.com

*Proposed Local Counsel to the Debtors and Debtors in Possession*

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Elizabeth McColm
Alexander Woolverton
Michael M. Turkel
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
akornberg@paulweiss.com
emccolm@paulweiss.com
awoolverton@paulweiss.com
mturkel@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

The Agreements

| **Counterparty** | **Counterparty Address** | **Debtor** | **Contract Description** |
|---|---|---|---|
| Bawtry Carbon International Limited | Austerfield, Doncaster South Yorkshire, DN10 6QT United Kingdom | Noranda Aluminum, Inc. | Cathode Supply Agreement - Dated 2/5/2015 |
| FCA US LLC, f/k/a Chrysler Group LLC | Attn: Sigmund E. Huber, Global Director, Supplier Relation & Risk Management CIMS 484-01-26 800 Chrysler Drive Auburn Hills, MI 48326 | Noranda Aluminum, Inc. | Silafont Sales Agreement - Dated 1/17/2016 |
| General Cable Industries, Inc. | Attn: Paul Eaglin 4 Tesseneer Drive Highland Heights, KY 41076-9753 | Noranda Aluminum, Inc. | Rod Sales Agreement - Dated 4/12/2013 |
| Greenwich Metals, Inc. | Attn: Phillip A. Essenhigh 22 West Putnam Avenue Greenwich, CT 08830 | Noranda Aluminum, Inc. | Aluminum Magnesium Supply Agreement - Dated 7/16/2015 |
| Marubeni America Corporation | Attn: Mr. Mitsutake Amano, Vice President Metals & Mineral Resources Unit 375 Lexington Avenue New York, NY 10017-5844 | Noranda Aluminum, Inc. | Rod Sales Agreement - Dated 10/22/2015 |
| Metal Exchange | Attn: Steve Kalfus 111 West Port Plaza Suite 704 St. Louis, MO 63141 | Noranda Aluminum, Inc. | Aluminum Sales Agreement - Dated 12/21/2015 |
| Mexichem Flour Comercial, S.A. de C.V. | Attn: Hector Valle Martin Eje 106 S/N Zona Industrial 78395 San Luis Potosi, S.L.P., Mexico | Noranda Aluminum, Inc. | Aluminum Fluoride Supply Agreement - Dated 1/1/2012 |
| Nehring Electrical Works | Attn: Mr. Ray Hott PO Box 965 Dekalb, IL 60115 | Noranda Aluminum, Inc. | Rod Sales Agreement - Dated 10/15/2014 |
| Petrocoque S.A. Industria E Comercio | Attn: Gustavo Franca, Commercial Director Rodovia Conego Domenico Rangoni SP-055, KM 267,5, Cubatao SP 11573-000, Brazil | Noranda Aluminum Holding Corporation | Coke Supply Agreement - Dated 1/1/2015 |

| **Counterparty** | **Counterparty Address** | **Debtor** | **Contract Description** |
|---|---|---|---|
| Rain CII Carbon, LLC | Attn: Chief Commercial Officer<br>1330 Greengate Dr<br>Suite 300<br>Covington, LA 70433 | Noranda Aluminum, Inc. | Coke Supply Agreement - Dated 7/1/2015 |
| SGL Carbon GmbH | Werner-Von-Siemens Strasse<br>18D-86405 Meitingen<br>Germany | Noranda Aluminum, Inc. | Cathode Supply Agreement - Dated 2/5/2015 |
| Sherwin Alumina Company, LLC | Attn: Mr. Thomas Russell<br>4633 Hwy 361<br>Gregory, TX 78469 | Noranda Bauxite Limited | Bauxite Sales Agreement - Dated 12/29/2012 |
| The Okonite Company | Attn: Mr. Richard Brill<br>Hilltop Road, PO Box 340<br>Ramsey, NJ 07466 | Noranda Aluminum, Inc. | Rod Sales Agreement - Dated 11/19/2013 |
| Western Extrusions | Attn: Mr. Mark C. Aldredge<br>1735 Sandy Lakes<br>Carrollton, TX 75006-3612 | Noranda Aluminum, Inc. | Billet Sales Agreement - Dated 10/7/2014 |