## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SHERWIN ALUMINA COMPANY, LLC, *et al.*[1] | § | Case No. 16-20012 (DRJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |
| SHERWIN ALUMINA COMPANY, LLC, | § | Chapter 11 |
| | § | Adversary Case No. 16- _____ (DRJ) |
| | § | |
| *Plaintiff,* | § | |
| vs. | § | |
| | § | |
| NORANDA BAUXITE LTD. | § | |
| | § | |
| *Defendant.* | § | |

## ADVERSARY COMPLAINT FOR DECLARATORY RELIEF

Sherwin Alumina Company, LLC ("Sherwin" or "Plaintiff") brings this complaint for declaratory relief ("Complaint") against Defendant Noranda Bauxite Ltd. ("NBL" or "Defendant") and respectfully states as follows:

### Nature of the Action

1.      Sherwin brings this Complaint for declaratory judgment to resolve a dispute between the parties regarding Sherwin's performance and compliance under an interim bauxite supply agreement that was so-ordered by this Court (where Sherwin is a debtor and debtor in possession) on May 9, 2016, and by the U.S. Bankruptcy Court for the Eastern District of Missouri (where NBL is a debtor and debtor in possession), on May 11, 2016.

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sherwin Alumina Company, LLC (2376); and Sherwin Pipeline, Inc. (9047).  The debtors' service address is:  4633 Highway 361, Gregory, Texas 78359.

2.      Under the interim arrangement, Sherwin agreed to purchase, and NBL agreed to supply, from a minimum amount of 315,000 dry metric tonnes of bauxite to a maximum amount of 385,000 dry metric tonnes of bauxite over a 90-day period.

3.      After it had purchased and paid for more than 315,000 dry metric tonnes of bauxite, Sherwin reached the unfortunate conclusion that it could no longer continue to operate as a going concern and had to commence the process of winding up its affairs.  Accordingly, Sherwin advised NBL that it was cancelling its final outstanding order for approximately 45,000 dry metric tonnes of bauxite.

4.      Notwithstanding Sherwin's financial straits and its purchase of more than the minimum required under the interim arrangement, NBL has taken the position with Sherwin that Sherwin is obligated to pay the full purchase price (more than $1.2 million) for the bauxite that Sherwin can no longer take delivery of or use—without regard even to whether NBL can or will sell that bauxite to other customers.

5.      Absent the declaratory relief requested herein, this dispute over whether Sherwin is obligated to pay over $1.2 million to NBL, and take delivery of bauxite that it can no longer process, will hamper Sherwin's ability to craft a confirmable chapter 11 plan of liquidation and to wind-down its business in an environmentally safe manner.

**Parties, Jurisdiction and Venue**

6.      Plaintiff Sherwin Alumina Company, LLC is a Delaware limited liability company with its principal place of business in Gregory, Texas.  Sherwin purchases bauxite to manufacture and sell alumina, which is a key component in aluminum.

7.      Defendant NBL is a limited company formed under the laws of Jamaica with its principal place of business in St. Ann, Jamaica.  NBL mines, extracts and sells bauxite.

8.      This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

9.      This adversary proceeding constitutes a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157(b).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1409 based on Sherwin's bankruptcy case filed under chapter 11 of title 11 of the United States Code.

## Background

11.     On or about December 29, 2012, Sherwin and NBL entered into a contract pursuant to which Sherwin agreed to buy, and NBL agreed to sell, bauxite at agreed upon prices until December 31, 2017 ("Bauxite Sales Agreement").   The Bauxite Sales Agreement subsequently was amended to extend the termination date to December 31, 2018.

12.     On January 11, 2016, due largely to slumping aluminum prices, Sherwin filed with this Court a petition under chapter 11 of title 11 of the United States Code.  In connection with its bankruptcy filing, and because the Bauxite Sales Agreement was critical to Sherwin's operations, Sherwin filed in this Court a motion to assume the Bauxite Sales Agreement ("Sherwin's Assumption Motion")

13.     On February 8, 2016, NBL and certain of its affiliates commenced bankruptcy cases before the U.S. Bankruptcy Court for the Eastern District of Missouri (the "Missouri Bankruptcy Court").   In connection with its bankruptcy filing, NBL filed in the Missouri Bankruptcy Court a motion to reject the Bauxite Sales Agreement ("NBL's Rejection Motion").

14.     On April 1, 2016, the Missouri Bankruptcy Court conducted an evidentiary hearing on NBL's Rejection Motion.  There was no hearing on Sherwin's Assumption Motion.

15.     On April 8, 2016, the Missouri Bankruptcy Court granted NBL's Rejection Motion, authorizing NBL to reject the Bauxite Sales Agreement *nunc pro tunc* to February 8, 2016.

16.     Thereafter, Sherwin and NBL engaged in discussions to determine whether they could reach agreement on a long-term or interim bauxite supply arrangement.

17.     On or about May 6, 2016, Sherwin and NBL reached agreement on an interim bauxite supply arrangement that was memorialized in the *Agreed Stipulation and Order Between Sherwin Alumina Company, LLC and Noranda Bauxite Limited* of that same date ("Interim Bauxite Arrangement").

18.     The orders approving the Interim Bauxite Arrangement were entered by both this Court and the Missouri Bankruptcy Court, both of which retained jurisdiction to enforce the arrangement.  True and correct copies of such orders are attached as **Exhibit A**.

19.     Broadly speaking, the Interim Bauxite Arrangement requires NBL to sell bauxite to Sherwin through August 11, 2016, on the terms set forth in the agreement.  More specifically, the Interim Bauxite Arrangement required Sherwin to "nominate and purchase" at least 350,000 dry metric tonnes ("DMT") of bauxite, subject to a positive or negative variance of 10%, at an agreed purchase price of $27.25 per DMT.  (*See* Ex. A at ¶ 3.)  In other words, consistent with the express terms of the Interim Bauxite Arrangement, Sherwin's minimum purchase obligation was 315,000 DMT of bauxite (which is 90% of 350,000 DMT).

20.     Sherwin already has accepted and paid for 315,392 DMT of bauxite pursuant to the Interim Bauxite Arrangement.

21.     Nonetheless, a dispute has arisen regarding Sherwin's performance under and compliance with the Interim Bauxite Arrangement.

22.     More specifically, on or about May 12, 2016, Sherwin submitted to NBL an order for approximately 45,000 DMT of bauxite (the "J18 Nomination").

23.     On or about July 29, 2016, following discussion between the parties regarding the J18 Nomination but before NBL had shipped or delivered the bauxite referenced therein, Sherwin notified NBL that it (a) had complied with all of its obligations under the Interim Bauxite Arrangement, (b) no longer wished to exercise its right to purchase bauxite from NBL under the Interim Bauxite Arrangement, and (c) was cancelling and terminating the J18 Nomination in all respects.

24.     Sherwin took this action because it can no longer continue as a going concern and will instead wind down its operations.  Sherwin's decision in this regard was driven, in large part, by the fact that it could not reach a long-term supply agreement for bauxite with NBL at a price that was affordable to Sherwin, together with the fact that NBL has not identified a purchaser of its business, with whom Sherwin might have been able to enter into a long-term bauxite supply agreement.

25.     Once Sherwin decided to wind down its operations, it had no need or use for the bauxite referenced in the J18 Nomination and, accordingly, canceled that order.  By cancelling the J18 Nomination, Sherwin and its creditors avoided an expense of $1,226,250 to purchase bauxite for which it has no need.  In addition, because Sherwin does not intend to continue to operate, any bauxite that Sherwin is forced to receive from NBL may create potential environmental and/or other closure concerns if such bauxite were to remain on the premises. Therefore, by cancelling the J18 Nomination, Sherwin also avoided $750,000 (or more) in additional expenses required to clean up and move this unneeded bauxite after delivery.

26.     In response, NBL alleges that Sherwin's cancellation of the J18 Nomination is a breach of the Interim Bauxite Arrangement and claims that Sherwin owes it the full purchase price of approximately $1,226,250 for the bauxite referenced in the J18 Nomination, with no offset even were NBL able to sell the bauxite to another customer.

27.     In light of NBL's response, Sherwin commenced this declaratory judgment action to resolve this case and controversy concerning its performance and obligations under the Interim Bauxite Arrangement.

### Claim for Relief

### (Declaratory Judgment)

28.     Sherwin repeats and incorporate the allegations contained in paragraphs 1–27 as if fully set forth herein.

29.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

30.     An actual and justiciable case or controversy has arisen between Sherwin and NBL regarding Sherwin's compliance with the purchase obligations under the Interim Bauxite Arrangement, with Sherwin maintaining that it has satisfied all such obligations and NBL arguing that Sherwin is in breach of the arrangement.

31.     Pursuant to the express terms of Paragraph 3 of the Interim Bauxite Arrangement, Sherwin is required to "nominate and purchase" at least 315,000 DMT of bauxite and has the right to nominate and purchase up to 385,000 DMT.

32.     Sherwin has already nominated, purchased and accepted 315,392 DMT of bauxite from NBL.  Accordingly, Sherwin maintains that it has fully discharged and complied with its obligation under the Interim Bauxite Arrangement to take at least 315,000 DMT.

6

33.     While NBL cannot dispute that Sherwin has paid for and accepted 315,392 DMT of bauxite from NBL, it claims that Sherwin is required under the Interim Bauxite Arrangement to take and pay approximately $1,226,250 for the bauxite referenced in the now-cancelled J18 Nomination.

34.     Because Sherwin already has purchased more bauxite than is required under Interim Bauxite Arrangement, it is entitled to judgment declaring that (a) it is not in breach of the Interim Bauxite Arrangement, (b) it has fully complied with and discharged all of its obligations under the Interim Bauxite Arrangement, and (c) the J18 Nomination has been cancelled and terminated in all respects.

WHEREFORE, Plaintiff Sherwin demands judgment against Defendant NBL and requests the following relief:

a.      declaratory judgment in Plaintiff's favor that (i) it is not in breach of the Interim Bauxite Arrangement, (ii) it has fully complied with and discharged all of its obligations under the Interim Bauxite Arrangement, and (iii) J18 Nomination has been cancelled and terminated in all respects; and

b.      Such other relief as the Court deems just and proper to protect Plaintiff including, but not limited to, equitable relief under 11 U.S.C. § 105.

Respectfully submitted,


*/s/ Joseph R. Serino, Jr., P.C.*

Dated: August 2, 2016
Joseph R. Serino, Jr., P.C. (admitted *pro hac vice*)
Christopher J. Marcus, P.C. (admitted *pro hac vice*)
Shireen Barday (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:         joseph.serino@kirkland.com
                christopher.marcus@kirkland.com
                shireen.barday@kirkland.com

- and -

Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:         gregory.pesce@kirkland.com

- and -

Zack A. Clement (TX Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond
Houston, Texas 77025
Telephone:    (832) 274-7629
Email:         zack.clement@icloud.com

*Counsel for the Debtors and Debtors in Possession*

## **Certificate of Service**

I certify that on August 2, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Joseph R. Serino, Jr., P.C.*
One of Counsel

**<u>Exhibit A</u>**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 16-10083-399 |
| **NORANDA ALUMINUM, INC.,** *et al.*, | **Chapter 11** |
| Debtors. | **Jointly Administered** |

## AGREED STIPULATION AND ORDER BETWEEN SHERWIN ALUMINA COMPANY, LLC AND NORANDA BAUXITE LIMITED

Sherwin Alumina Company, LLC ("Sherwin") and Noranda Bauxite Limited ("NBL"), each

a debtor and debtor in possession, through their respective counsel, hereby enter into this stipulation

and agreed order (this "Stipulation and Order").

### Recitals

**WHEREAS**, as of December 29, 2012, Sherwin and NBL entered in the Bauxite Sales

Agreement (as amended, modified, or otherwise supplemented in accordance with the terms thereof,

the "Bauxite Supply Agreement");

**WHEREAS,** Sherwin, as successor in interest to Surela Investments Ltd., became the lender

to NBL under the Credit Agreement, dated December 29, 2012 (as amended, modified, or otherwise

supplemented in accordance with the terms thereof, the "NBL Credit Agreement");

**WHEREAS**, on January 11, 2016 (the "Sherwin Petition Date"), Sherwin and Sherwin

Pipeline, Inc. (the "Sherwin Debtors") filed voluntary petitions with the United States Bankruptcy

Court for the Southern District of Texas (the "Texas Bankruptcy Court") for relief under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code"), which chapter 11 cases are being

jointly administered under the lead case *In re Sherwin Alumina Company, LLC* [S.D. Tex. Case No.

16-20012];

**WHEREAS**, the Sherwin Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, on the Sherwin Petition Date, the Sherwin Debtors filed their *Emergency Motion of Sherwin Alumina Company, LLC, et al., for Entry of an Order Authorizing the Debtors to (I) Assume the Noranda Agreement and (II) Satisfy Obligations Under the Noranda Agreement and Enforce the Automatic Stay* [Sherwin Docket No. 21] (the "Sherwin Assumption Motion"), pursuant to which the Sherwin Debtors requested entry of an order authorizing Sherwin to assume the Bauxite Supply Agreement;

**WHEREAS**, on February 8, 2016 (the "Noranda Petition Date"), NBL and certain of its affiliates (the "Noranda Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Missouri (the "Missouri Bankruptcy Court"), which chapter 11 cases are being jointly administered under the lead case *In re Noranda Aluminum, Inc.* [E.D. Mo. Case No. 16-10083];

**WHEREAS**, the Noranda Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, on the Noranda Petition Date, the Noranda Debtors filed their *Motion to Reject Lease or Executory Contract* Nunc Pro Tunc *to the Petition Date Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 6004* [Noranda Docket No. 52] (the "NBL Rejection Motion") seeking entry of an order authorizing NBL to reject the Bauxite Supply Agreement;

**WHEREAS**, on the Noranda Petition Date, NBL filed *Noranda Bauxite Limited's Expedited Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) and 362(d)* [Sherwin

Docket No. 234] (the "NBL Lift Stay Motion"), pursuant to which NBL sought to condition future shipments of bauxite to Sherwin on modified pricing terms;

WHEREAS, on March 25, 2016, Sherwin filed its *Motion for Entry of an Order Modifying the Automatic Stay and Authorizing Setoff of Mutual Prepetition Claims Under Supply Agreement and Loan Agreement* [Noranda Docket No. 540] (the "Sherwin Set-Off Motion"), pursuant to which Sherwin requested entry of an order modifying the automatic stay to allow Sherwin to set off certain amounts owed by NBL to Sherwin under the NBL Credit Agreement in full and final satisfaction of all prepetition obligations owed by Sherwin to NBL under the Bauxite Supply Agreement;

WHEREAS, on April 1, 2016, the Missouri Bankruptcy Court held a hearing regarding the NBL Rejection Motion and, on April 7, 2016, the Missouri Bankruptcy Court entered its *Order Granting Motion to Reject Long Term Bauxite Sales Agreement Between Noranda Bauxite Ltd. and Sherwin Alumina Co., LLC* [Noranda Docket No. 609] (the "NBL Rejection Order"), pursuant to which it authorized NBL to reject the Bauxite Supply Agreement, *nunc pro tunc* to the Noranda Petition Date;

WHEREAS, on April 20, 2016, Sherwin filed a notice of appeal of the NBL Rejection Order [Noranda Docket No. 670], which appeal is currently pending before the United States District Court for the Eastern District of Missouri, in the case captioned *Sherwin Alumina Co., LLC* v. *Noranda Aluminum, Inc. (In re Noranda Aluminum, Inc.)*, Case No. 4:16-CV-00559-CEJ  (the "Rejection Order Appeal");

WHEREAS, on May 5, 2016, the Noranda Debtors filed the *Debtors' Objection to Motion of Sherwin Alumina Company, LLC For Entry of an Order Modifying the Automatic Stay and Authorizing Set Off of Mutual Prepetition Claims Under Supply Agreement and Loan Agreement* [Noranda Docket No. 718] the ("Set-Off Objection"), pursuant to which the Noranda Debtors argue

that Sherwin may not set off any amounts owed by NBL to Sherwin against amounts owed by Sherwin to NBL, and to the extent Sherwin has such rights, they are substantially limited under the Bankruptcy Code;

**WHEREAS**, Sherwin and NBL (together, the "Parties") have negotiated in good faith and now desire to memorialize certain understandings and agreements they have reached with respect to, among other things, certain matters related to the Bauxite Supply Agreement;

**WHEREAS**, the Texas Bankruptcy Court and Missouri Bankruptcy Court each have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

**WHEREAS**, each of the Sherwin Debtors and the Noranda Debtors have determined that the compromises set forth herein are fair and reasonable, and in the best interests of their respective estates and creditors.

## **Stipulation and Order**

**NOW, THEREFORE, IT IS STIPULATED BY THE PARTIES AND HEREBY ORDERED THAT:**

1.     The foregoing recitals are hereby incorporated by reference into this Stipulation and Order.

2.     This Stipulation and Order shall not be effective unless and until it has been entered by each of the Texas Bankruptcy Court and the Missouri Bankruptcy Court (the later of such dates, the "Effective Date").

3.     Notwithstanding entry of the Rejection Order, the Parties agree to the following terms regarding the nomination and shipment of bauxite shipments during the period commencing as of the

date of the Effective Date of this Stipulation and Order through the date that is ninety (90) days after

the Effective Date (the "Interim Period"):

    a.  Notwithstanding entry of the NBL Rejection Order, during the Interim Period, Sherwin shall nominate and purchase, and NBL shall load, bauxite shipments (collectively, and except as expressly provided herein, including those certain bauxite shipments nominated by Sherwin on or about April 12 and May 4, 2016, the "Bauxite Shipments") in accordance with the following schedule:

        i.  First Thirty (30) Days: 130,00 dry metric tonnes ("DMT") +/- 10%;

        ii.  Second Thirty (30) Days: 130,000 DMT +/- 10%; and

        iii.  Final Thirty (30) Days: 90,000 DMT +/- 10%.[1]

    b.  With respect to each Bauxite Shipment, Sherwin shall pay an amount equal to 50% of the Agreed Purchase Price (as defined below) with respect to the applicable Bauxite Shipment no later than 5:00 p.m., prevailing Eastern Time, on the day before a vessel nominated by Sherwin docks at St. Ann to receive such Bauxite Shipment, and any remaining amounts payable on account of such Bauxite Shipment no later than 5:00 p.m., prevailing Eastern time, on the day of customary verification but before unloading of such Bauxite Shipment in Corpus Christi, Texas.

    c.  With respect to each Bauxite Shipment nominated during the Interim Period, Sherwin shall pay $27.25 per ton (fixed) (subject to any GOJ Relief (as defined below), the "Agreed Purchase Price"), with NBL bearing its own demurrage costs relating to docking and loading in St. Ann to the same extent that it bore such costs in connection with the supply of bauxite to Sherwin pursuant to the Bauxite Supply Agreement prior to entry of the NBL Rejection Order.

    d.  The Agreed Purchase Price with respect to those two certain bauxite shipments nominated on or around April 12, 2016, and May 4, 2016, shall equal $25.62 per ton (fixed), with NBL bearing its own demurrage costs relating to docking and loading in St. Ann to the same extent that it bore such costs in connection with the supply of bauxite to Sherwin pursuant to the Bauxite Supply Agreement prior to entry of the NBL Rejection Order.

    e.  To the extent that, in the normal course and consistent with past practice, Sherwin pays any demurrage costs to any freight service counterparty in connection with the Bauxite Shipments nominated during the Interim Period, then if such payments, consistent with past practice, would be owed by NBL to Sherwin, then Sherwin shall have, and be deemed to have, an allowed claim entitled to priority as an administrative expense against NBL in its chapter 11 case.

---

[1] Laycans shall be confirmed thirty (30) days prior to scheduled delivery.

f.  The Agreed Purchase Price will not be adjusted for quality; provided that NBL agrees that the quality of the Bauxite Shipments shall fall within the range of the historic quality measurements of the parties under the Bauxite Supply Agreement prior to entry of the NBL Rejection Order; provided, further, that the parties shall transport the Bauxite Shipments (including loading and unloading the Bauxite Shipments) in a manner consistent with past practice.

g.  "GOJ Relief" shall mean, (i) a reduction (including a reduction effectuated through a setoff) in the amount of any levy, royalty, fee, or other charge payable to the Government of Jamaica or instrumentalities thereof, including Jamaica Bauxite Mining Ltd. (the "GOJ") under an agreement or arrangement entered into between any of the Noranda Debtors and the GOJ, on or after May 5, 2016, which applies to, is calculated by reference to, or specifically takes into account bauxite shipped during the Interim Period which has the effect of reducing the average cash cost per ton of bauxite shipped by NBL during the Interim Period (regardless of when such reduction is implemented), less (ii) the allocable portion of amounts payable, or the value of concessions made, by the Noranda Debtors directly resulting from such agreement or arrangement (other than any payment by the Noranda Debtors on account of priority tax claims or postpetition administrative expense obligations); provided, however that GOJ Relief shall not include any income tax credits, offsets or deductions which NBL is permitted to take under section 12 of the Jamaican Bauxite and Alumina Industries (Special Provisions) Act, as set forth in the Decision of the Tribunal, dated December 18, 2015, in the matter of an arbitration between NBL and the GOJ (the "Excluded Tax Credits").

h.  "GOJ Cost Ton Reduction" shall mean (i) an amount equal to the GOJ Relief, divided by (ii) the aggregate number of tons of bauxite shipped by NBL during the Interim Period.

i.  The GOJ Cost Ton Reduction shall retroactively reduce, on a dollar-for-dollar basis, the Agreed Purchase Price, it being understood that NBL shall refund the amount of any such Agreed Purchase Price with respect to any Bauxite Shipment to the extent that Sherwin previously remitted payment for any such Bauxite Shipment to NBL in excess of such reduced Agreed Purchase Price. NBL agrees that it shall promptly provide Sherwin with documentation regarding (i) any GOJ Relief and any GOJ Cost Ton Reduction and (ii) the amount of any Excluded Tax Credits.

4.     The Sherwin Debtors are authorized and directed to pay by wire transfer the amounts set forth in Paragraph 3 of this Stipulation and Order.

5.     Sherwin and its affiliates, including Glencore plc, will use reasonable best efforts to support the Noranda Debtors' efforts to achieve concessions under the Jamaican Bauxite Levy Act

from the GOJ, as well as any other GOJ Relief.  All such efforts shall be at the Noranda Debtors'
request and shall be coordinated with the Noranda Debtors.

6.      No later than five business days following entry of this Stipulation and Order:  (a)
Sherwin shall withdraw with prejudice the Rejection Order Appeal; (b) NBL shall withdraw with
prejudice the NBL Stay Relief Motion; and (c) Sherwin shall withdraw with prejudice the Sherwin
Assumption Motion.

7.      The mediation currently pending in the Texas Bankruptcy Court between Sherwin,
NBL and certain third parties shall be suspended solely as it relates to NBL, unless and until Sherwin
and NBL request resumption thereof.

8.      Sherwin shall not request that the Missouri Bankruptcy Court schedule the Sherwin
Set-Off Motion for hearing until after the Interim Period has expired.

9.      During the Interim Period, the Parties shall use their reasonable best efforts to
negotiate in good faith regarding a longer-term arrangement concerning the ongoing supply of
bauxite to the Sherwin Debtors from NBL.  For the avoidance of doubt, nothing in this paragraph
shall impair any of either Sherwin or NBL's rights as a creditor or party in interest in NBL or
Sherwin's respective chapter 11 cases except as expressly stated herein.

10.      Notwithstanding the relief granted in this Stipulation and Order or any actions taken
pursuant to such relief, the Sherwin Debtors expressly reserve the right to seek to set off any
prepetition amounts owed by NBL to the Sherwin Debtors, and NBL expressly reserves any and all
rights to object to any such setoff.

11.      The Sherwin Debtors agree and stipulate that any Bauxite Shipment shall be budgeted
for in the Approved Budget (as defined in in the *Final Order (I) Authorizing the Debtors to Utilize
Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender,*

*(III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Sherwin Docket No. 431] and

any successor order), including, without limitation, as to freight costs and demurrage.

12.     Except as expressly stated herein, notwithstanding the relief granted in this

Stipulation and Order or any actions taken pursuant to such relief, nothing in this Stipulation and

Order shall be deemed:  (a) an implication or admission that any particular claim is of a type

specified or defined in this Stipulation and Order; (b) an authorization to assume any prepetition

agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (c) a waiver of the

substantive or procedural rights of the Sherwin Debtors, the Noranda Debtors, or Commodity

Funding, LLC under the Bankruptcy Code or any other applicable law; and/or (d) a consent by any

party to the jurisdiction of any court.

13.     The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized and

directed to receive, process, honor, and pay all such checks and electronic payment requests when

presented for payment, and all such banks and financial institutions are authorized to rely on the

Sherwin and Noranda Debtors' designation of any particular check or electronic payment request as

approved by this Stipulation and Order.

14.     The contents of the motion for entry of this Stipulation and Order satisfy the

requirements of Bankruptcy Rule 6003(b).

15.     Notice of the proposed entry of this Stipulation and Order as provided therein shall be

deemed good and sufficient notice of the proposed entry of this Stipulation and Order and the

requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such

notice.

16.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Stipulation and Order are immediately effective and enforceable upon its entry.

17.     Neither this Stipulation and Order nor any negotiations and writings in connection with this Stipulation and Order will in any way be construed as or deemed to be evidence of or an admission on behalf of any Party hereto regarding any claim or right that such Party may have against the other Party unless such claim or right is specifically addressed in this Stipulation and Order.

18.     This Stipulation and Order has been reviewed by the Parties hereto and their respective counsel, and each of the Parties enters into this Stipulation and Order voluntarily and without duress.  There shall be no construction of any provision against either Party, and the Parties hereto waive any statute or rule to such effect.

19.     The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation and Order.

20.     The Texas Bankruptcy Court and the Missouri Bankruptcy Court shall each retain jurisdiction to resolve any dispute arising from or related to the interpretation or enforcement of this Stipulation and Order; provided that the Missouri Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute regarding the amount of any GOJ Relief or GOJ Cost Ton Reduction.

21.     Subject to court approval, each Party represents that it possesses full power and authority to execute, deliver, and perform their respective obligations under this Stipulation and Order and that the persons executing this Stipulation and Order on their behalf are duly authorized to execute and deliver this Stipulation and Order.

22.     This Stipulation and Order may be executed in identical counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

23.     No later than two (2) business days after the date of entry of this Order, the Debtors shall serve a copy of this Order, and no later than 24 hours after such service, the Debtors shall file a certificate of service with the Court.

**IN  WITNESS  WHEREOF**, the Parties, by their authorized counsel, executed this Stipulation and Order as of the date written below.

DATED:  May 13, 2016
St. Louis, Missouri
cke

Barry S. Schermer
United States Bankruptcy Judge

Dated:  May 6, 2016

**SHERWIN ALUMINA COMPANY, LLC**

*/s/ Gregory F. Pesce*

Gregory F. Pesce
gregory.pesce@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60054
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Dated:  May 6, 2016

**NORANDA BAUXITE LTD.**

*/s/ Alan W. Kornberg*

Alan W. Kornberg
akornberg@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3209
Facsimile:  (212) 492-0209



ENTERED
05/09/2016

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| SHERWIN ALUMINA COMPANY, LLC,  et al.,[1] | § | Case No. 16-20012 |
|  | § | **(David R. Jones)** |
| Debtors. | § | (Jointly Administered) |
|  | § |  |

### *AGREED* STIPULATION AND ORDER BETWEEN SHERWIN ALUMINA COMPANY, LLC AND NORANDA BAUXITE LIMITED
(Docket No. 581)

Sherwin Alumina Company, LLC ("Sherwin") and Noranda Bauxite Limited ("NBL"), each a debtor and debtor in possession, through their respective counsel, hereby enter into this stipulation and agreed order (this "Stipulation and Order").

### Recitals

**WHEREAS**, as of December 29, 2012, Sherwin and NBL entered in the Bauxite Sales Agreement (as amended, modified, or otherwise supplemented in accordance with the terms thereof, the "Bauxite Supply Agreement");

**WHEREAS,** Sherwin, as successor in interest to Surela Investments Ltd., became the lender to NBL under the Credit Agreement, dated December 29, 2012 (as amended, modified, or otherwise supplemented in accordance with the terms thereof, the "NBL Credit Agreement");

**WHEREAS**, on January 11, 2016 (the "Sherwin Petition Date"), Sherwin and Sherwin Pipeline, Inc. (the "Sherwin Debtors") filed voluntary petitions with the United States Bankruptcy Court for the Southern District of Texas (the "Texas Bankruptcy Court") for relief

---

[1]       The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sherwin Alumina Company, LLC (2376) and Sherwin Pipeline, Inc. (9047). The debtors' service address is: 4633 Highway 361, Gregory, Texas 78359.

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which chapter 11 cases are being jointly administered under the lead case *In re Sherwin Alumina Company, LLC* [S.D. Tex. Case No. 16-20012];

**WHEREAS**, the Sherwin Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, on the Sherwin Petition Date, the Sherwin Debtors filed their *Emergency Motion of Sherwin Alumina Company, LLC, et al., for Entry of an Order Authorizing the Debtors to (I) Assume the Noranda Agreement and (II) Satisfy Obligations Under the Noranda Agreement and Enforce the Automatic Stay* [Sherwin Docket No. 21] (the "Sherwin Assumption Motion"), pursuant to which the Sherwin Debtors requested entry of an order authorizing Sherwin to assume the Bauxite Supply Agreement;

**WHEREAS**, on February 8, 2016 (the "Noranda Petition Date"), NBL and certain of its affiliates (the "Noranda Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Missouri (the "Missouri Bankruptcy Court"), which chapter 11 cases are being jointly administered under the lead case *In re Noranda Aluminum, Inc.* [E.D. Mo. Case No. 16-10083];

**WHEREAS**, the Noranda Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, on the Noranda Petition Date, the Noranda Debtors filed their *Motion to Reject Lease or Executory Contract* Nunc Pro Tunc *to the Petition Date Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 6004* [Noranda Docket No. 52]

2

(the "NBL Rejection Motion") seeking entry of an order authorizing NBL to reject the Bauxite Supply Agreement;

WHEREAS, on the Noranda Petition Date, NBL filed *Noranda Bauxite Limited's Expedited Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. §§ 105(a) and 362(d)* [Sherwin Docket No. 234] (the "NBL Lift Stay Motion"), pursuant to which NBL sought to condition future shipments of bauxite to Sherwin on modified pricing terms;

WHEREAS, on March 25, 2016, Sherwin filed its *Motion for Entry of an Order Modifying the Automatic Stay and Authorizing Setoff of Mutual Prepetition Claims Under Supply Agreement and Loan Agreement* [Noranda Docket No. 540] (the "Sherwin Set-Off Motion"), pursuant to which Sherwin requested entry of an order modifying the automatic stay to allow Sherwin to set off certain amounts owed by NBL to Sherwin under the NBL Credit Agreement in full and final satisfaction of all prepetition obligations owed by Sherwin to NBL under the Bauxite Supply Agreement;

WHEREAS, on April 1, 2016, the Missouri Bankruptcy Court held a hearing regarding the NBL Rejection Motion and, on April 7, 2016, the Missouri Bankruptcy Court entered its *Order Granting Motion to Reject Long Term Bauxite Sales Agreement Between Noranda Bauxite Ltd. and Sherwin Alumina Co., LLC* [Noranda Docket No. 609] (the "NBL Rejection Order"), pursuant to which it authorized NBL to reject the Bauxite Supply Agreement, *nunc pro tunc* to the Noranda Petition Date;

WHEREAS, on April 20, 2016, Sherwin filed a notice of appeal of the NBL Rejection Order [Noranda Docket No. 670], which appeal is currently pending before the United States District Court for the Eastern District of Missouri, in the case captioned *Sherwin Alumina Co.,*

*LLC* v. *Noranda Aluminum, Inc. (In re Noranda Aluminum, Inc.)*, Case No. 4:16-CV-00559-CEJ (the "Rejection Order Appeal");

WHEREAS, on May 5, 2016, the Noranda Debtors filed the *Debtors' Objection to Motion of Sherwin Alumina Company, LLC For Entry of an Order Modifying the Automatic Stay and Authorizing Set Off of Mutual Prepetition Claims Under Supply Agreement and Loan Agreement* [Noranda Docket No. 718] the ("Set-Off Objection"), pursuant to which the Noranda Debtors argue that Sherwin may not set off any amounts owed by NBL to Sherwin against amounts owed by Sherwin to NBL, and to the extent Sherwin has such rights, they are substantially limited under the Bankruptcy Code;

WHEREAS, Sherwin and NBL (together, the "Parties") have negotiated in good faith and now desire to memorialize certain understandings and agreements they have reached with respect to, among other things, certain matters related to the Bauxite Supply Agreement;

WHEREAS, the Texas Bankruptcy Court and Missouri Bankruptcy Court each have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

WHEREAS, each of the Sherwin Debtors and the Noranda Debtors have determined that the compromises set forth herein are fair and reasonable, and in the best interests of their respective estates and creditors.

## Stipulation and Order

NOW, THEREFORE, IT IS STIPULATED BY THE PARTIES AND HEREBY ORDERED THAT:

1.       The foregoing recitals are hereby incorporated by reference into this Stipulation and Order.

2.      This Stipulation and Order shall not be effective unless and until it has been entered by each of the Texas Bankruptcy Court and the Missouri Bankruptcy Court (the later of such dates, the "Effective Date").

3.      Notwithstanding entry of the Rejection Order, the Parties agree to the following terms regarding the nomination and shipment of bauxite shipments during the period commencing as of the date of the Effective Date of this Stipulation and Order through the date that is ninety (90) days after the Effective Date (the "Interim Period"):

     a.  Notwithstanding entry of the NBL Rejection Order, during the Interim Period, Sherwin shall nominate and purchase, and NBL shall load, bauxite shipments (collectively, and except as expressly provided herein, including those certain bauxite shipments nominated by Sherwin on or about April 12 and May 4, 2016, the "Bauxite Shipments") in accordance with the following schedule:

        i.   First Thirty (30) Days: 130,00 dry metric tonnes ("DMT") +/- 10%;

        ii.  Second Thirty (30) Days: 130,000 DMT +/- 10%; and

        iii. Final Thirty (30) Days: 90,000 DMT +/- 10%.[2]

     b.  With respect to each Bauxite Shipment, Sherwin shall pay an amount equal to 50% of the Agreed Purchase Price (as defined below) with respect to the applicable Bauxite Shipment no later than 5:00 p.m., prevailing Eastern Time, on the day before a vessel nominated by Sherwin docks at St. Ann to receive such Bauxite Shipment, and any remaining amounts payable on account of such Bauxite Shipment no later than 5:00 p.m., prevailing Eastern time, on the day of customary verification but before unloading of such Bauxite Shipment in Corpus Christi, Texas.

     c.  With respect to each Bauxite Shipment nominated during the Interim Period, Sherwin shall pay $27.25 per ton (fixed) (subject to any GOJ Relief (as defined below), the "Agreed Purchase Price"), with NBL bearing its own demurrage costs relating to docking and loading in St. Ann to the same extent that it bore such costs in connection with the supply of bauxite to Sherwin pursuant to the Bauxite Supply Agreement prior to entry of the NBL Rejection Order.

     d.  The Agreed Purchase Price with respect to those two certain bauxite shipments nominated on or around April 12, 2016, and May 4, 2016, shall equal $25.62 per ton (fixed), with NBL bearing its own demurrage costs relating to docking and

---

[2] Laycans shall be confirmed thirty (30) days prior to scheduled delivery.

loading in St. Ann to the same extent that it bore such costs in connection with the supply of bauxite to Sherwin pursuant to the Bauxite Supply Agreement prior to entry of the NBL Rejection Order.

e.   To the extent that, in the normal course and consistent with past practice, Sherwin pays any demurrage costs to any freight service counterparty in connection with the Bauxite Shipments nominated during the Interim Period, then if such payments, consistent with past practice, would be owed by NBL to Sherwin, then Sherwin shall have, and be deemed to have, an allowed claim entitled to priority as an administrative expense against NBL in its chapter 11 case.

f.   The Agreed Purchase Price will not be adjusted for quality; provided that NBL agrees that the quality of the Bauxite Shipments shall fall within the range of the historic quality measurements of the parties under the Bauxite Supply Agreement prior to entry of the NBL Rejection Order; provided, further, that the parties shall transport the Bauxite Shipments (including loading and unloading the Bauxite Shipments) in a manner consistent with past practice.

g.   "GOJ Relief" shall mean, (i) a reduction (including a reduction effectuated through a setoff) in the amount of any levy, royalty, fee, or other charge payable to the Government of Jamaica or instrumentalities thereof, including Jamaica Bauxite Mining Ltd. (the "GOJ") under an agreement or arrangement entered into between any of the Noranda Debtors and the GOJ, on or after May 5, 2016, which applies to, is calculated by reference to, or specifically takes into account bauxite shipped during the Interim Period which has the effect of reducing the average cash cost per ton of bauxite shipped by NBL during the Interim Period (regardless of when such reduction is implemented), less (ii) the allocable portion of amounts payable, or the value of concessions made, by the Noranda Debtors directly resulting from such agreement or arrangement (other than any payment by the Noranda Debtors on account of priority tax claims or postpetition administrative expense obligations); provided, however that GOJ Relief shall not include any income tax credits, offsets or deductions which NBL is permitted to take under section 12 of the Jamaican Bauxite and Alumina Industries (Special Provisions) Act, as set forth in the Decision of the Tribunal, dated December 18, 2015, in the matter of an arbitration between NBL and the GOJ (the "Excluded Tax Credits").

h.   "GOJ Cost Ton Reduction" shall mean (i) an amount equal to the GOJ Relief, divided by (ii) the aggregate number of tons of bauxite shipped by NBL during the Interim Period.

i.   The GOJ Cost Ton Reduction shall retroactively reduce, on a dollar-for-dollar basis, the Agreed Purchase Price, it being understood that NBL shall refund the amount of any such Agreed Purchase Price with respect to any Bauxite Shipment to the extent that Sherwin previously remitted payment for any such Bauxite Shipment to NBL in excess of such reduced Agreed Purchase Price.  NBL agrees that it shall promptly provide Sherwin with documentation regarding (i) any GOJ

Relief and any GOJ Cost Ton Reduction and (ii) the amount of any Excluded Tax Credits.

4.     The Sherwin Debtors are authorized and directed to pay by wire transfer the amounts set forth in Paragraph 3 of this Stipulation and Order.

5.     Sherwin and its affiliates, including Glencore plc, will use reasonable best efforts to support the Noranda Debtors' efforts to achieve concessions under the Jamaican Bauxite Levy Act from the GOJ, as well as any other GOJ Relief.  All such efforts shall be at the Noranda Debtors' request and shall be coordinated with the Noranda Debtors.

6.     No later than five business days following entry of this Stipulation and Order: (a)  Sherwin shall withdraw with prejudice the Rejection Order Appeal; (b) NBL shall withdraw with prejudice the NBL Stay Relief Motion; and (c) Sherwin shall withdraw with prejudice the Sherwin Assumption Motion.

7.     The mediation currently pending in the Texas Bankruptcy Court between Sherwin, NBL and certain third parties shall be suspended solely as it relates to NBL, unless and until Sherwin and NBL request resumption thereof.

8.     Sherwin shall not request that the Missouri Bankruptcy Court schedule the Sherwin Set-Off Motion for hearing until after the Interim Period has expired.

9.     During the Interim Period, the Parties shall use their reasonable best efforts to negotiate in good faith regarding a longer-term arrangement concerning the ongoing supply of bauxite to the Sherwin Debtors from NBL.  For the avoidance of doubt, nothing in this paragraph shall impair any of either Sherwin or NBL's rights as a creditor or party in interest in NBL or Sherwin's respective chapter 11 cases except as expressly stated herein.

10.     Notwithstanding the relief granted in this Stipulation and Order or any actions taken pursuant to such relief, the Sherwin Debtors expressly reserve the right to seek to set off

7

any prepetition amounts owed by NBL to the Sherwin Debtors, and NBL expressly reserves any and all rights to object to any such setoff.

11.    The Sherwin Debtors agree and stipulate that any Bauxite Shipment shall be budgeted for in the Approved Budget (as defined in in the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Sherwin Docket No. 431] and any successor order), including, without limitation, as to freight costs and demurrage.

12.    Except as expressly stated herein, notwithstanding the relief granted in this Stipulation and Order or any actions taken pursuant to such relief, nothing in this Stipulation and Order shall be deemed:  (a) an implication or admission that any particular claim is of a type specified or defined in this Stipulation and Order; (b) an authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (c) a waiver of the substantive or procedural rights of the Sherwin Debtors, the Noranda Debtors, or Commodity Funding, LLC under the Bankruptcy Code or any other applicable law; and/or (d) a consent by any party to the jurisdiction of any court.

13.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Sherwin and Noranda Debtors' designation of any particular check or electronic payment request as approved by this Stipulation and Order.

14. The contents of the motion for entry of this Stipulation and Order satisfy the requirements of Bankruptcy Rule 6003(b).

15. Notice of the proposed entry of this Stipulation and Order as provided therein shall be deemed good and sufficient notice of the proposed entry of this Stipulation and Order and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

16. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Stipulation and Order are immediately effective and enforceable upon its entry.

17. Neither this Stipulation and Order nor any negotiations and writings in connection with this Stipulation and Order will in any way be construed as or deemed to be evidence of or an admission on behalf of any Party hereto regarding any claim or right that such Party may have against the other Party unless such claim or right is specifically addressed in this Stipulation and Order.

18. This Stipulation and Order has been reviewed by the Parties hereto and their respective counsel, and each of the Parties enters into this Stipulation and Order voluntarily and without duress. There shall be no construction of any provision against either Party, and the Parties hereto waive any statute or rule to such effect.

19. The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation and Order.

20. The Texas Bankruptcy Court and the Missouri Bankruptcy Court shall each retain jurisdiction to resolve any dispute arising from or related to the interpretation or enforcement of this Stipulation and Order; provided that the Missouri Bankruptcy Court shall have exclusive

9

jurisdiction to resolve any dispute regarding the amount of any GOJ Relief or GOJ Cost Ton Reduction.

21.     Subject to court approval, each Party represents that it possesses full power and authority to execute, deliver, and perform their respective obligations under this Stipulation and Order and that the persons executing this Stipulation and Order on their behalf are duly authorized to execute and deliver this Stipulation and Order.

22.     This Stipulation and Order may be executed in identical counterparts, including by facsimile and/or electronic mail, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

**IN WITNESS WHEREOF**, the Parties, by their authorized counsel, executed this Stipulation and Order as of the date written below.

Dated:  May 6, 2016                    **SHERWIN ALUMINA COMPANY, LLC**

                                       */s/ Gregory F. Pesce*
                                       Gregory F. Pesce
                                       gregory.pesce@kirkland.com
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle
                                       Chicago, Illinois 60054
                                       Telephone:  (312) 862-2000
                                       Facsimile:  (312) 862-2200

Dated:  May 6, 2016                    **NORANDA BAUXITE LTD.**

                                       */s/ Alan W. Kornberg*
                                       Alan W. Kornberg
                                       akornberg@paulweiss.com
                                       PAUL, WEISS, RIFKIND,
                                       WHARTON & GARRISON LLP
                                       1285 Avenue of the Americas
                                       New York, New York 10019-6064
                                       Telephone:  (212) 373-3209
                                       Facsimile:  (212) 492-0209

**IT IS SO ORDERED.**

 **Signed:  May 09, 2016.**

                                       _____
                                       **DAVID R. JONES**
                                       **UNITED STATES BANKRUPTCY JUDGE**